ELI MITCHELL AND OTHERS v. CLINTON C. DE WITT AND OTHERS.

Upon the death of the husband in 1840, the wife's interest in the community be-
came liable to her disposition, subject to the community debts and the charges
of administration.   Her vendee took subject to the administration.

See this case for circumstances under which it was held that a sale by an ad-
ministrator *de bonis non*, was valid against a purchaser from a distributee,
where the latter had purchased during a hiatus in the administration of the
estate, and it was claimed by him that when he purchased the administration
was virtually closed.

Where there is really no question of fact in the case, upon the evidence intro-
duced, the judgment will not be reversed because the Court charged the jury
to find in favor of the party in whose favor the law was.

Appeal from Gonzales.   Tried below before the Hon. Fielding
Jones.

John K. Castleman died in 1840, leaving a widow, Sarah
Castleman, and as part of his estate a league of land in Gonzales
county, which he had purchased from Byrd Lockhart, and which
was community property.   On the 13th of November, 1840,
said Sarah applied for letters of administration; at November
Term, order for letters to issue as prayed; December 1st bond
filed and approved; inventory and appraisement; February
Term, 1841, on petition of the sureties of said administratrix,
they were discharged, and time was given till the first Monday
in March to give a new bond.   March 15th, petition of J. B.
Hartin and G. P. Ellis, for letters of administration, alleging
that the application was made with the consent of said Sarah;
notices published.   March 29th, new bond filed by said Sarah
and approved, with Hartin and Ellis and two others as sureties.
March 29th, also, petition of Wm. C. Brookfield for letters,
representing himself as a creditor, and that the letters to said
Sarah had been annulled.   May 31st three of the sureties peti-
tion for release; granted at May Term.   June 1st, 1841, new
bond filed and approved, with three sureties.   October Term,
1841, one of the sureties discharged on his application, and order
for another in his stead.   December Term, 1841, order for new
security not being complied with, letters revoked.   Same Term,

order for appointment of Spencer Townsend as administrator of said estate. Bond filed and approved. Inventory of property, &c., handed over to said administrator. Sept. 26th, 1842, petition by the administrator, on account of the intricacy of the business of the estate, to be allowed to employ counsel to assist him. Sept. Term, ordered that I. W. Burton, attorney at law, be appointed to aid the administrator in the settlement of said estate. November Term, 1842, ordered that I. W. Burton, attorney for the administrator of said estate, be allowed till next Term to make returns. January Term, 1843, order that Martha Burton, surviving widow of I. W. Burton, deliver to Townsend, the administrator, all the papers, &c. January 29th, 1844, petition by Sarah McDonald, late Sarah Castleman, widow of John K. Castleman, alleging that the estate was not indebted when Townsend was appointed administrator, that petitioner had been appointed guardian of her three children James, Andrew and John, the only heirs of John K. Castleman, and praying that said administrator be required to make a final settlement of said estate, and that the said estate may be delivered to petitioner in her own right and as guardian, &c. Citation served on Townsend to appear at February Term, &c. February Term, account filed, in which the administrator charged himself with cash collected $29; and credited himself with $78 60, paid out, principally attorney's fees, costs of Court and taxes for the year 1841. Over $2,600 in claims due the estate were returned uncollected; there was also a list of real property belonging to the estate. At same Term Townsend resigned, and William McDonald was appointed administrator *de bonis non.* September 29th, 1846, petition of William McDonald, representing that he had been unable to give security; that no person could be found who would or could administer on said estate; that the estate was still unadministered, and the papers in the Clerk's office, among which were land certificates which ought to be located, and claims which would be barred by the statute of limitations if not soon attended to ; that petitioner is guardian of the only heirs, John and Andrew Castleman, making profert of his letters of guardianship which had been issued by the Probate Court of Gonzales (the administration was in Houston county.) Prayer that all the papers of the estate be delivered to petitioner, as guardian, in order that he might locate the land certificates, collect the claims and make the best disposition of the same possible for payment of the few outstanding claims against the estate; or if such order be not legal, then

that petitioner be appointed special administrator without bond; or if such order be not legal, then that the Court make such order herein as may save the estate &c.

Sept. Term, 1846, letters of administration ordered to be issued to John Hartgraves, upon his giving bond, &c.

July 26, 1847, petition of Swonson Yarborough, representing said estate to be still unadministered; alleging that McDonald had long since deserted the said Sarah his wife; that she was *non compos mentis*, and utterly destitute; that petitioner, from motives of humanity, had taken her to his house, &c. July Term, 1847, order for issuance of special letters of administration to said Yarborough, upon his giving bond, &c. Bond given and approved. Sept. Term, 1847, after notice, said Yarborough was appointed general administrator *de bonis non*, and gave bond, &c. Inventory filed July 29th, 1848; and same day petition filed for order to sell certain property, and for continuation of the administration one year. July Term, order for publication of notice to the absent heirs, and that the administration be continued one year from next September Term. Same Term appraisers appointed to appraise all the property of said estate in Gonzales and Walker counties, where the land lay for the sale of which the administrator had applied. Citation returned executed. August Term continued. September Term, leave to administrator to amend his petition for order of sale. Sept. 25th, amendment of petition accordingly, stating that the administrator had cause to believe that the land for the sale of which he had already petitioned, would not sell for enough to discharge the indebtedness of the estate, and praying for order of sale also of one thousand acres out of the northeast corner of the league of land purchased from Byrd Lockhart, in Gonzales county. Order at same Term, to sell certain real estate, among which was one thousand acres to be surveyed in a square out of the N. E. corner of the Byrd Lockhart league, and to be sold in the town of Gonzales. May 28th, 1849, return of sales made on the 1st day of May, showing that the one thousand acres out of the Byrd Lockhart league, which had been appraised at $400, was sold to Benjamin Adams for $125. Same Term, order of confirmation. May 28th, 1849, petition for further order to sell part of the Byrd Lockhart league, previous sales not amounting to enough to discharge the indebtedness of the estate. Order for sale accordingly, in the town of Gonzales; appraisers appointed, &c. Found to contain 1,120 acres, and appraised at $560. August

Term, 1849, return of sale of said land to P. Coe for $235. Same Term, petition for order to sell balance of said league, in three parcels; order accordingly, to sell in Gonzales county. February Term, 1850, return of sale, of one parcel to John Goss for two and a half cents per acre; another to H. Askey for three cents per acre; and the third to H. Askey for forty-seven cents per acre. Same Term sale of third parcel confirmed, and sale of other two set aside. Same Term petition and order for sale of the other two parcels of the Byrd Lockhart league. July Term, 1850, return of sale of one parcel of 1,000 acres more or less to John S. Hodges for $200; of the other parcel of 909 acres more or less to P. H. Coe for $87 31½. Same Term, sales confirmed.

In the mean time, on the 18th of October, 1844, Sarah McDonald, formerly Castleman, joined by her husband, sold and conveyed one-third of a league of land off the south end of said Byrd Lockhart league, to Eli Mitchell. And on the 25th day of May, 1846, said Sarah McDonald, joined by her husband, in consideration of $20, and natural love and affection, conveyed to Mary Brown, the daughter of said William McDonald, all the right to said Byrd Lockhart league, which by reason of said Sarah's having been the wife of John K. Castleman, they had the right to convey. Both deeds were recorded. The person with whom the widow Castleman intermarried, was sometimes called McDonald, sometimes McDaniel, and sometimes Daniels in the record.

Mitchell and Brown and wife brought separate suits, about the same time, for a division between them, and to eject the purchasers at the Probate sales and those claiming under them; and the suits were consolidated. Upon the facts above stated, the Court charged the jury as follows:—

The case before you is one depending almost entirely upon a question of law, which it is the duty of the Court to decide; that is, the legality of the Probate sale made by order of the Court of Houston county. I charge you that the sale made by the administrator *de bonis non* of Castleman's estate, under which the defendants claim, is valid, and would convey the title of Castleman, and you should find for defendant.

To this charge the plaintiffs excepted, and asked the Court to charge the jury:—

1st. That if they believe from the evidence that the estate

had been turned over to Mrs. McDaniel, and that there was no administrator at the time Mitchell and Brown bought, then they should find for plaintiffs.

2d. That if they believe from the evidence, that Mrs. McDaniel sold to Mitchell and Brown after the 28th February, 1844, and before the appointment of an administrator in 1847, the conveyance was good for the amount sold.

Verdict and judgment for defendants. Motion for new trial overruled, &c.

*J. Ireland,* for appellants. The question is, Did Mrs. McDaniel, alias Castleman, have the power to sell after the close of the administration in 1844 ? I think it is decided by the case of Chub v. Johnson, 11 Tex. R. 469; in that case there was an acting administration, and in the case at bar there was no administration, but it had been virtually closed. The charge of the Court was an invasion of the rights of the jury, and in violation of the law of the case. He erred also in refusing to give the charges asked by plaintiffs.

*Stewart & Mills,* for appellees. All alienations, in a case like this, may be overreached by sales to pay debts; any other rule would place it in the power of heirs or surviving partner of the marriage to rid the estate of its debts by such sales. We do not say the sales to Mitchell and Mary Brown were null, for " the policy of the law imposes no impediment to the sale, because the rights of the creditors are not affected by such purchase, as the land, in law, still is subject to the payment of the debts of the deceased." (Erskine v. De la Baum, 3 Tex. R. 421.)

But it may be said the administration was closed before Yarborough was appointed. The record shows the estate to have been in an involved and confused condition; former administrators had involved it more; and their powers revoked; Townsend resigned; nor was there ever any approximation of a settlement of the estate up to Townsend's resignation; not a shadow in the record to show there was ever any settlement of the estate, except that of Yarborough. The petition of McDaniel the husband shows the condition of the estate, and further showed great necessity for action by the Probate Court of that county. The children were minors; two of them non-residents—and the mother a lunatic. No case can be found in our books at least, where an adminis-

tration *de bonis non*, like this, is declared a nullity and the administrator's deed and sale null and void.

WHEELER, J. Upon the death of Castleman his wife's interest in the community became liable to her disposition; but subject to the community debts, and the charges of administration. By a sale of her community interest she could not deprive the Probate Court of its power to order administration of the estate. She could not defeat the rights of creditors, nor relieve the community from the charges of administration. Her vendee would take the estate subject to those rights and burdened with those charges.

At the time of the sale by the late widow, now Mrs. McDaniel, there was no acting administrator of the estate; the former administrator having resigned, and McDaniel, who had been appointed to succeed him as administrator *de bonis non*, having failed to qualify; being, as he afterwards informed the Court, unable to give the requisite security. But the administration had not been closed. It was merely suspended until McDaniel should qualify and take upon himself the administration. He did not, it seems, inform the Court of his inability to do so until after he had joined his wife in the sale of her interest. Administration having been afterwards granted to one who did qualify. and proceed, by order of the Probate Court and in the due course of administration to sell the property, there can be no question that the purchaser at such sale took a good title, notwithstanding the prior sale by McDaniel and wife. Mrs. McDaniel's right was subordinate to that of creditors of the community, and of administration. If it were not so, upon the death of one of the parties to the marriage, the survivor could defeat the rights of creditors, and deprive the Probate Court of its jurisdiction over the estate, by a sale of the property. The fact of the administration and sale by order of the Probate Court having been conclusively established by the record of the Court; the facts being indisputably proved, there really was no question of the weight of evidence, to submit to the jury. The question was one purely of law arising upon a state of facts not disputed. The Court ruled the law correctly; and though the charge might have been so framed as apparently to leave the jury more freedom of decision, yet it would have been but a mere form; for the Court was bound to decide the law, and the jury could not

have decided differently without a plain violation of law and their duty. The objection to the charge, therefore, resolves itself into a mere question of form, and cannot afford a ground for reversing the judgment.

Judgment affirmed.