# FIRST DISTRICT, 1896.

---

HOUSTON & TEXAS CENTRAL RAILWAY CO. v. FRITZ BERLING.

Delivered November 12, 1896.

**1.  Charge of Court—Facts Established by Uncontradicted Evidence.**
    When a fact is established by uncontradicted evidence, it is not error for the charge of the court to assume its existence.

**2.  Ex Parte Deposition—Confessed—Question for Court.**
    Whether or not a party to a suit has wilfully and contumaciously refused to answer interrogatories propounded to him, so that they may be taken as confessed against him, is a question for the court, and not the jury.

**3.  Verdict of Jury Sufficient.**
    Where there is but one plaintiff and one defendant, the following verdict is sufficient:  "We, the jury, find for the plaintiff, Fritz Berling, $2500."

**4.  Assessment of Damages—Verdict—Appeal.**
    The verdict of a jury fixing the amount of damages will not be disturbed on appeal, unless the amount be so great, considered in reference to the evidence, as to make it probable it was the result of passion.

**5.  Physical Examination—Selection of Surgeon.**
    If the plaintiff in an action for personal injuries can in any case be compelled to submit to a physical examination by a surgeon, the surgeon should be one agreed on by the parties or selected by the court, and not one who has already testified adversely to the plaintiff.

APPEAL from Harris.   Tried below before Hon. S. H. BRASHEAR.

*Baker, Botts, Baker & Lovett* and *Frank Andrews*, for appellant.

*Ewing & Ring*, for appellee.

PLEASANTS, ASSOCIATE JUSTICE.—This is an appeal from a verdict and judgment rendered for appellee against appellant, for $2500 damages for injuries to his person, received by appellee, as averred by him, through the negligence of the appellant's servants. The petition averred that the plaintiff was in the employment of the appellant, and that, while so employed, he was ordered by the foreman, a servant of appellant, and under whose orders plaintiff was working, to cut a trench from a large telegraph pole standing on the appellant's right of way; and that, while engaged in cutting said trench, in obedience to the order of said foreman, the said foreman, with the assistance of other employes of appellant, attempted to move another telegraph pole connected with the one about which plaintiff was working by a wire; and when said foreman and his assistants lifted said pole from its position in the ground, for the purpose of setting it farther from the appellant's railway track, it toppled over and fell, and by reason thereof the pole about which plaintiff was working and all the intervening poles in the telegraph line between plaintiff and the said foreman and his assistants, toppled and fell toward and near to the surface of the earth, and that the pole about which plaintiff was digging fell upon him, and inflicte upon him serious and lasting injuries, in several parts of his body, an to several of his organs, describing with particularity his various injuries, and averring that he was in consequence of said injuries permanently disabled for manual labor; that plaintiff was not warned of the danger to him from the attempt by the foreman to move from its place said telegraph pole; that plaintiff was ignorant of the intention of said foreman to move said pole; that the pole which the foreman attempted to move was several hundred yards distant from the pole about which plaintiff was working; that the morning was dark and foggy, and that, by reason thereof, the plaintiff and said foreman and his assistants were invisible to each other at the time of the attempt to move the pole as aforesaid; that plaintiff was ignorant of the business of moving telegraph poles, and did not know of the dangers incident thereto; that he was working for appellant at the time, under the orders of said foreman, and that said foreman was appellant's vice-principal.   To the petition, the appellant answered by general demurrer and general denial, and pleaded specially that plaintiff was guilty of contributory negligence; that plaintiff was thoroughly informed of the danger, if any, of the work he was doing; that he was experienced in such work; that he knew the poles were going to be moved at the time, and that he assumed the risk of the work he was doing.

Our conclusions of fact are:   "That at the time of the accident, the

appellee was digging a trench from a certain telegraph pole in the appellant's right of way to a point where it was proposed by appellant to move and reset the pole; that appellee was in the trench shovelling out the earth with his back to the pole, when the pole fell and struck him, and held him fast in the trench until he was released by his co-laborers; that appellee was badly hurt by the blow from the falling pole and was unable, without help, to walk; and that he was, during the day, sent by his foreman to the Houston Infirmary, where he remained and was treated by the surgeons in charge for about forty days, when he refused to further follow the instructions of his physicians, and left the institution; that the day previous to his injury, the appellee had, with other section hands, under the direction and superintendence of the section foreman, dug trenches from several telegraph poles connected by wire with the one about which he was digging when he was injured; that the appellant, for the purpose of making room for a switch, which was to be constructed over a certain portion of the right of way, ordered the section foreman to remove certain telegraph poles, and reset them in the ground at designated spots. The poles were to be taken up and reset without removing the telegraph wires; and this was to be done under instructions given the foreman by an employe of the appellant, known as Western Union lineman. These instructions required that a trench be dug from each pole, except the two standing midway the line of poles to be removed. These trenches were to be as deep as the poles were sunken in the ground, and of sufficient width to admit the passage of the poles through them to the places into which the poles were to be reset. There was only one pole left intact, instead of two, as the lineman directed. Six or seven of the trenches were completed on the evening before the appellee was injured. On the morning of the day of the accident, when the hand car on which the foreman and the appellee and the other section hands were going to their work reached the unfinished trenches, the appellee, with two others of the section gang, under the direct order of the foreman, according to the appellee's evidence, but only with the foreman's permission and approval, according to the evidence for appellant-left the hand car, for the purpose of completing these trenches, while the foreman and lineman and the rest of the section gang proceeded to the most distant of the poles from which the trenches had been dug the evening before, for the purpose of removing and resetting these poles. The modus operandi in removing the poles was to drive spikes in each pole near the ground, and with levers, placed under these spikes, to prize the pole up, and, keeping it in a perpendicular position, to shove it through the trench to the spot at which it was to be reset. In attempting to remove the first pole, it toppled over and dragged after it all the other poles which were to be removed; and the pole around which appellee was working fell upon him and hurt him as above stated. The foreman at the time did not notify appellee, by signal or otherwise, that he was removing the pole. The presence of a fog obstructed the view between the foreman and appellee, and neither could be

seen by the other at the time of the accident. The appellee, at the time of the injury to him, was between 58 and 60 years of age, was a German, and, by trade, a gardener, but for two or three years he had been employed as a railroad hand at $45 per month. The foreman, under whom appellee was working when injured, was vice-principal of appellant. He was guilty of negligence in not following the instructions of the lineman to leave two poles without trenches, and in permitting appellee to remain in the trench in which he was hurt while the poles were being removed. Whether or not, appellee was ordered by the foreman, on the morning of the accident, to dig or finish the trench in which he was at work when injured, or whether the appellee chose to do that work in preference to going with the foreman further down the line, and whether appellee learned from the remarks made as he left the hand car by the foreman to his section hands, or whether appellee otherwise knew, or should have known, that the work of moving and resetting the poles would begin when the foreman got to those poles about which the trenches were finished, and whether or not appellee knew, or could have known by the exercise of ordinary prudence, that it would be hazardous to remain in the trench with his back to the pole, while other poles were being removed,—were all issues as to which the evidence was conflicting, but there was evidence for the plaintiff to sustain a finding for him upon each of the issues. So, also, the evidence was conflicting as to the extent and the degree of the plaintiff's injuries; but there was evidence sufficient to warrant the jury in concluding that the injuries were such as to permanently disable the plaintiff for manual labor.

The charge of the court was as follows:

"If the jury believe from the evidence, that the foreman Rumpel was on the occasion in question defendant's agent, and as such had the control and superintendence of plaintiff and the crew in which plaintiff was serving, and of the work being then performed; and that, in the exercise of such control and superintendence, he directed plaintiff to dig, or finish digging, the alleged trench in which plaintiff was working, and that in the exercise of such control and superintendence, such foreman, without giving or causing to be given any warning to plaintiff, directed others of such crew to move one of the telegraph poles in question, and that while such employes were attempting to do so in obedience to such command, the poles fell, and inflicted the alleged injury upon plaintiff; then if the jury further believe that said acts or conduct of said foreman in directing plaintiff to do such work at that time, or in directing the moving of such pole without informing plaintiff, or causing him to be informed of that fact, or in both particulars combined, was negligence, or want of ordinary care, and did result as alleged, then plaintiff is entitled to recover, and the verdict must be in his favor, unless the jury further believe from the evidence that the plaintiff, before or at the time of going into the alleged trench, or afterwards, knew or discovered the alleged danger to which plaintiff claims

he was exposed, or that by the exercise of ordinary care he could have discovered it, or the falling of the poles, in time to have avoided injury, or that by the want of ordinary care he occupied such position at the time that he was thereby prevented from making such discovery, as would have enabled him to obviate such injury, then in any of such events the verdict must be for the defendant.

"The burden of proof is upon the plaintiff to make out his case, and unless the above supposed facts upon which plaintiff's right to recover is predicated are shown by a preponderance of the evidence, that is, the greater weight and degree of credible evidence, let the verdict be for the defendant.

"By 'ordinary care,' as the phrase is herein used, is meant such care as an ordinarily prudent person would have exercised under the same or similar circumstances. The want of such ordinary care is negligence.

"If the verdict is for plaintiff, the jury will take into consideration the nature and character of his alleged injuries, and assess his damages at such sum as the jury may believe from the evidence will fairly compensate him for the injuries received; taking into consideration, as elements of damage, so far as shown by the evidence to result from such injuries, mental anguish and physical suffering, loss of time since the alleged injuries were received, and loss of future earning power, if any.

"The credibility of the witnesses and the weight of the evidence are for the determination of the jury, and by the jury's conclusions thereon, under the law as given in the instructions of the court, let the verdict be determined.

"As to the interrogatories propounded to plaintiff by defendant and not answered by him (and which have been put in evidence), you are instructed that they are to be considered as confessed against him, and are to be taken as full proof against him of the matters and things there inquired about, unless you believe he did not wilfully and contumaciously refuse to answer same. If you find he did not so refuse to answer same, you will then give his declination to answer just such weight as to you seems proper."

The first assignment of error is, "that the court in its general charge failed to submit to the jury the issues in the case which were necessary for the jury to consider in determining their verdict, and which were necessary to properly direct the minds of the jury, in their consideration of the case, about those matters necessary for them to consider in arriving at their verdict."

The charge clearly and succinctly submitted to the jury all the issues made by the pleadings and the evidence, and it did, in our opinion, properly direct the minds of the jurors to the consideration of all matters necessary to be considered and determined, before they could render a verdict. We do not see how the charge could have been more specific in this particular, without violating the rule which forbids the court to charge upon the weight of the evidence.

The second assignment of error complains that the first paragraph of the charge gives undue prominence to the facts to which this paragraph directs the minds of the jury; but upon a critical inspection of the lan‑ guage in which this paragraph of the charge is concluded, we fail to discover the error insisted upon by the assignment. The second proposition submitted under this assignment we have disposed of in what we have said in discussing the first assignment.

The third assignment is, in effect, that the fourth paragraph of the charge is erroneous, because in it the court assumes as facts that the plaintiff was injured and damaged, that he suffered mental anguish and physical pain, and that he lost time since the alleged injuries were re‑ ceived. The language of the charge, it will be observed, is hypotheti‑ cal: "If the verdict is for the plaintiff," etc. By a previous paragraph, the jury were instructed what facts they must find from the evidence to exist, before they could return a verdict for the plaintiff. The court can not, we think, be said to have assumed the existence of any such facts. But had the court assumed that the plaintiff was injured, as al‑ leged in the petition, by a falling telegraph pole, and that he suffered physical pain and loss of time since he was injured, there would have been no error; for the reason that the evidence was conclusive and un‑ contradicted that plaintiff was injured as alleged, that he lost time, and that he suffered physical pain; the only controversy over these points was as to the degree and duration of the injuries and the physical suf‑ fering, and the amount of time actually lost from labor consequent upon the injuries. When any fact is established by uncontradicted evidence, it is not error for the court in its charge to assume its existence. Teal v. Terrell, 58 Texas, 257; Mitchell v. DeWitt, 20 Texas, 294; Hedge‑ peth v. Robertson, 18 Texas, 858.

The error of the court complained of by appellant under the fourth as‑ signment, is one which is not available to appellant. The court erred in submitting to the jury the issue whether or not the plaintiff wilfully and contumaciously refused to answer the interrogatories propounded to him by appellant. This issue was one for the determination by the court, and not the jury; and under the evidence in this case, that issue should have been decided in favor of appellee; and the interrogatories and the answers made thereto by the appellee, at the instance of his counsel, after the deposition had been returned to the court, by the officer to whom the commission was addressed, should have been excluded from the consideration of the jury.

The fifth assignment, that the verdict is insufficient to form the basis of a judgment against the defendant, presents a proposition to which we cannot assent. There is but one plaintiff and one defendant in the suit, and the verdict is: "We, the jury, find for the plaintiff, Fritz Berling, twenty-five hundred dollars. John McClelland, Foreman." Such verdicts have been again and again recognized as sufficient.

That the verdict may be large, may be conceded, but we are unable to say, under decisions heretofore rendered and approved by this and

the Supreme Court, that the verdict is excessive; and the sixth assignment of error is not therefore, in our opinion, maintainable. Large discretion is confided the jury in fixing the amount of damages, and, unless the amount be so great, considered in reference to the evidence, as to make it probable, at least, that the verdict was the result of passion, it should not be disturbed.

The seventh, eighth, ninth and tenth assignments are virtually disposed of in the disposition we have made of the fourth assignment of error, and we will therefore not discuss them. The eleventh assignment of error, that the verdict is contrary to the law and the evidence, in that the evidence shows that the plaintiff was guilty of such negligence as that he is not entitled to recover, and further, that the evidence conclusively shows that plaintiff knew the risk incident to the work he was performing, or by the exercise of ordinary care could have known it, and that he assumed the risk, and for the further reason, that the evidence does not establish negligence on the part of the defendant,—cannot be sustained, for the reason, as we have previously stated, that the evidence on all issues involving the alleged contributory negligence of appellee, and his knowledge or ignorance of the danger incident to the work, and his assumption or his non-assumption of the risk, while conflicting, was sufficient to authorize the jury to find for him upon each of these issues, and further, because the evidence was ample to justify the conclusion that the appellant was guilty of negligence, and that that negligence was the proximate cause of appellee's injuries, and because the court properly instructed the jury upon all the issues.

Nor can the twelfth assignment of error be sustained. This assignment complains of the refusal of the court to require the plaintiff to submit to a physical examination by appellant's witness, Dr. Red. If, in any case, a litigant suing for the recovery of damages, for alleged injuries to his person, caused by the negligence or the wrong of the defendant in the suit, can be, upon motion of the defendant, compelled to submit to a physical examination by a surgeon, such surgeon should be one agreed on by the parties, or one selected by the court, and not one who has already testified in the case adversely to the plaintiff. The court did not err in refusing to compel the plaintiff to permit the witness Dr. Red to make an examination of his person.

The judgment of the lower court is affirmed.          *Affirmed.*