## RABINOWITZ v. SMITH CO. (No. 995.)

(Court of Civil Appeals of Texas. Amarillo. Nov. 15, 1916. Rehearing Denied Dec. 20, 1916.)

1. TRIAL ⬥⟲284—INSTRUCTIONS—FAILURE TO OBJECT.

Mere failure to object to the general charge of the court does not estop a party from requesting instructions and excepting to, refusal of such requests, since under Vernon's Sayles' Ann. Civ. St. 1914, art. 1971, if there is no objection to the general charge, the objection only is waived and the charge is not approved.

[Ed. Note.—For other cases, see Trial, Cent. Dig. §§ 683–685; Dec. Dig. ⬥⟲284.]

**2. PLEADING ☞34(3) — GENERAL EXCEPTION —EFFECT—PRESUMPTIONS.**

Every reasonable intendment will be indulged in favor of the allegations in the petition under a general exception.

[Ed. Note.—For other cases, see Pleading, Cent. Dig. § 69; Dec. Dig. ☞34(3).]

**3. BROKERS ☞82(1) — ACTIONS—PLEADING— SUFFICIENCY.**

A petition in a broker's action for commission, alleging that he was to make a sale for part cash, the balance due to suit the purchaser, and that the lot was sold upon terms required by the seller to a purchaser willing and able to pay all cash, or to make terms to suit the seller, is not subject to a general exception.

[Ed. Note.—For other cases, see Brokers, Cent. Dig. § 101; Dec. Dig. ☞82(1).]

**4. PLEADING ☞228—MISJOINDER OF COUNTS —NECESSITY OF OBJECTION.**

If a petition is defective in failing to plead several alternative allegations by separate counts, special exceptions should be made on that ground, which a general exception will not reach.

[Ed. Note.—For other cases, see Pleading, Cent. Dig. §§ 584–590; Dec. Dig. ☞228.]

**5. PLEADING ☞248(4) — AMENDMENT — SUBSTITUTION OF NEW CAUSE.**

Where a broker's petition for commissions alleged that the price at which he was to sell the land was $8,000, $2,500 to be paid in cash, a subsequent amendment, repeating the allegations of the petition, except that the amount of cash was not to be less than $2,500, did not allege a new cause of action.

[Ed. Note.—For other cases, see Pleading, Cent. Dig. §§ 701–706, 708½; Dec. Dig. ☞248(4).]

**6. BROKERS ☞57(1)—COMMISSIONS—ACTIONS —EVIDENCE.**

Where a broker was authorized to sell a lot at $8,000, $2,500 to be paid in cash and the balance in terms to suit the purchaser, and the purchaser to give vendor's lien notes, and he sold the lot for $8,000, $4,500 in cash, the purchaser to assume certain vendor's lien notes which in fact had no existence, he was not entitled to commission, not having made the sale upon the terms required.

[Ed. Note.—For other cases, see Brokers, Cent. Dig. §§ 66, 67, 72; Dec. Dig. ☞57(1).]

Appeal from Dallas County Court; T. A. Works, Judge.

Action by the Smith Company against D. Rabinowitz. Judgment for plaintiff, and defendant appeals. Reversed, and judgment rendered for defendant.

Adams & Stennis, of Dallas, for appellant. Thompson, Knight, Baker & Harris, of Dallas, for appellee.

HUFF, C. J. The Smith Company, appellee, sued D. Rabinowitz for commission alleged to have been earned in the sale of a certain lot in the city of Dallas. The contract of listing is alleged as follows:

(1) "That on January 18, 1910, defendant (Rabinowitz) re-enlisted the said property with the plaintiff at the gross price of $8,000 (eight thousand dollars), $2,500 of which to be paid in cash by the purchaser, and the balance of the purchase price was to suit the purchaser as to the payment of same."

(2) "That the terms upon which said property was listed with plaintiff for sale was $2,500.00 cash, upon delivery of warranty deed and the residue of the purchase price to be secured by vendor's lien upon said property."

(3) After this cause had been pending in the court for some four or five years, on March 23, 1915, by an agreement appellee inserted in the petition the following: "That if the property was not listed with Smith Company upon the exact terms hereinabove set forth, it was listed to be sold upon the following terms, to wit: For $8,000, not less than $2,500 to be cash; balance in vendor's lien notes bearing 8 per cent interest upon terms to suit purchaser."

It is also alleged that it was agreed to pay 5 per cent. commission upon the gross sum of $8,000 "on and for the sale of said property." Four days after the re-enlistment plaintiff sold the property to one C. P. Dawson for the sum of $8,000, who was ready, willing, and able to meet the terms of defendant, or to pay all cash for said property, or to make the terms to suit the defendant. Again it is alleged:

"That the said plaintiff did sell the said property to the said C. P. Dawson upon terms required by defendant, but plaintiff avers that defendant, when requested to perform said contract made by plaintiff, as defendant's duly authorized and constituted agent, renounced said contract and refused, and still refuses, to perform the same, or to transfer the said property to said purchaser, notwithstanding he has been requested and urged to do so."

It is also alleged:

"That at no time after the said property was listed with plaintiff for the gross price of $8,000 did defendant change or modify the price, terms, or conditions on and for which said property was listed to be sold by plaintiff, but, on the contrary, and from time to time, over and always confirmed the said contract of enlistment, and urged these plaintiffs to employ their best energies to find a purchaser for the said property."

The appellant answered by exceptions, general denial, and as to the plea added March 23, 1915, interposed the plea of two-year statutes of limitation.

We shall first consider appellee's objections to the appellant's assignments of error, in which complaint is made to the action of the trial court in refusing four special requested instructions. The objections to the assignments are:

"That appellant waived said assignments of error for the reason that he approved the court's charge, which submitted an issue of fact for the jury's decision, and determination by his failure to object to such charge."

[1] Two of the requested instructions were peremptory, and requested a directed verdict, on the ground that there is no evidence showing that a sale was effected on the terms of the listing contract. The other two were instructions, requesting an application of the law to the facts on that issue. Proper bills of exceptions were taken and preserved to the action of the court in refusing the request. In the case of Railway Co. v. Alcorn, 178 S. W. 833, this court, speaking through Judge Hendricks, while reviewing the case of Steele Co. v. Dover, 170 S. W. 812, with reference to the construc-

tion given to the amendment of the statutes regulating charges, said:

"We disagree, however, with that holding, and think that a more reasonable construction of the statute, viewed as a whole, is that if a litigant makes a presentation in a special charge of an element of recovery, or of defense, appropriately based upon the facts and not embodied in the main charge, and sufficiently succinctly calls the court's attention to the omission, he is entitled to the submission of the charge, though he failed to object to the general charge on account of such omission."

In the recent case of Roberts v. Houston, etc., 188 S. W. 257, the Court of Civil Appeals for the First District apparently in part concur with this court, while as to certain classes of requested instructions hold that a failure to object to the main charge would be an approval of the charge, and that a special requested instruction would not be considered. It is obvious, however, in the light of the construction given these statutes by the Supreme Court, in the case of Railway Co. v. Dickey, 187 S. W. 184, that the various Courts of Civil Appeals have reached their conclusion from a wrong premise; as, for instance, it is frequently said a party failing to object to the main charge will be considered as having approved it. The Supreme Court points out very clearly that the articles with reference to objections to the main charge do not require exceptions, and that article 2061, as to taking bills of exception, refers to requested instructions, and it is therefore the given or refused instructions which are approved when there is no bill of exceptions. If there is no objection made to the general charge, it is waived under article 1971. It is the objection that is waived; the charge is not approved as being the law applicable to the case by failing to object. The courts have time and again said since this act that if there is an omission, an objection to the main charge because of the omission will not sufficiently present error, but an instruction must be asked covering the omission. Modern Woodmen of America v. Yanowsky, 187 S. W. 729. It is apparently held because no objection is filed to a charge submitting the facts to the jury that this would be held to be an approval of the charge and, we presume, an admission that there are facts for the determination of a jury. If there are no facts raising an issue, there is nothing to submit or to be determined by the jury. This rule has long been followed in this state by all the courts. Mitchell v. De Witt, 20 Tex. 294; Henne v. Moultrie, 97 Tex. 216, 77 S. W. 607. A party should not be estopped from calling attention to the fact that there is no evidence, either by a special charge or upon motion for a new trial, simply because no objection was presented to the charge of the court. It has been the holding of the Supreme Court that a requested instruction, presented after the court has prepared its charge, is not invited error or an estoppel. Telegraph Co. v. Cowen, 97 Tex. 621, 81 S.

W. 27; Railway Co. v. Eyer, 96 Tex. 72, 70 S. W. 529. It has also been held, where it appears the charges requested by the appellant were asked in explanation and amplification of the charge of the court, that this does not estop the appellant. Railway Co. v. Pickens, 118 S. W. 1133; Paris Gro. Co. v. Burks, 56 Tex. Civ. App. 223, 120 S. W. 552. An invitation to do a thing is in some respects a waiver of any injury resulting from the doing of the thing. We call attention to this line of authorities because it has been suggested by some of the decisions cited in the brief that a general charge to which appellant does not object should be treated as invited error. We cannot very well conceive why a failure to object should be held to have invited the court to write the charge it did. The court writes its charge and submits it to counsel for objection, who may then prepare and present such instructions as he desires. If the court's charge is not full enough or does not correctly present the law as applied to the facts, we cannot see why the appellant should be estopped or be held to have waived his right to request proper instructions by the mere failure to object to the charge. It has also been suggested that if the charge is not objected to and special instructions are requested and given, there would be such a conflict between the two that the case would be reversed under that line of decisions requiring a reversal upon inconsistent charges. In the first place, we are not to presume the court will do a thing of that kind; the presumption should be that he will withdraw the erroneous charge and give the correct one, as the law requires that he shall. Railway Co. v. Dickey, 187 S. W. 184. If he does not do so, then in the face of that presumption the court ought not to assume that appellant has waived his rights, which are preserved under the statutes giving him the right to request such instructions as he might desire. If the charges requested should have been given and were proper to have been given, the question of objection to the main charge of the court should have nothing to do with it. The objections provided for under the statutes were evidently intended to correct a well-known evil—such a charge not in the proper form, upon mere construction of the language of the charge liable to be considered as a charge upon the weight of the evidence, and the like—well-known considered evils known to the profession. To hold a failure to object waives the right to request special instructions is to hold in effect a repeal of articles 1973 and 1974, giving the right. This cannot be done by any rule of statutory construction.

This court, in the case of Insurance Co. v. Rhoderick, 164 S. W. 1067, and Railway Co. v. Culver, 168 S. W. 514, called attention to the statutes, and suggested simply that the record must, in some appropriate manner, reveal the action of the court in overruling objections to the charge; that the rec-

ord must also show the objections were presented before the charge was read to the jury. We suggested that a bill of exception perhaps would be a proper manner, but we did not hold that this was the only method to be pursued in preserving the error of the court in overruling objections. In the Culver Case we expressly called attention to article 1972, which provides that the court's charge shall be regarded as excepted to and subject to revision for error without the necessity of taking a bill of exceptions, and we also called attention to article 2062, providing that where the ruling of the court appears otherwise of record, no bill is required. We did not attempt in those cases to construe the articles further than to apply them to the question there under consideration.

In the case of Railway Co. v. Galloway, 165 S. W. 550, where there was no objection to the general charge and a special instruction was requested on the same issue, without taking a bill to its refusal, and an assignment was based on the refusal of the court to charge and to the refusal of the special instructions on that issue, this court held that the failure to give the requested instruction under article 2061, in the absence of an exception to the action of the court refusing it, would be held to be approved, and in the absence of an objection to the general charge on that issue would be regarded as waived. We have not held that the failure to object would be an approval of the court's general charge, or that it would deprive the aggrieved party of the right to present error upon the refusal of requested instructions if properly presented by bill of exceptions. We note that the above cases have been cited as if supporting the latter proposition. This court has never intended to make such holding, but in the Alcorn Case, supra, expressly held a failure to object to the general charge would not defeat the right to assign error upon the refusal of the specially requested instruction.

[2, 3] The first assignment presents that the court was in error in overruling appellant's general exceptions to the petition. Every reasonable intendment will be indulged in favor of the allegations in the petition under a general exception. The objection appears to be that the petition alleges the authority of the agent was to make a sale, and the balance due on the purchase price "was to suit the purchaser as to the payment of same," or "upon terms to suit purchaser," and that the lot was sold "upon terms required by defendant," the seller. It was also alleged that the sale was made to a purchaser, "willing and able to pay all cash for said property, or to make terms to suit the defendant." We think it is reasonably apparent that it was alleged the agent was authorized to sell for a stipulated price, giving the cash required, and the balance was to be paid by the purchaser at such time as would suit him; that, a purchaser was found who was willing to take it on the terms mentioned or to pay all cash, or to make the terms, payments, to suit the defendant; that these terms, or either of them, suited the purchaser. The petition is not, in our judgment, subject to a general exception.

[4] The second assignment is overruled. If the petition is defective in failing to plead several alternative allegations by separate counts, the appellant should have presented a special exception on that ground. A general exception will not reach the defect, if any.

[5] The third assignment asserts that the third count or allegation, set up for the first time March 23, 1915, alleged a new cause of action, and was therefore barred by the statute of limitation. We do not think so. The contract of agency, in all the several ways alleged, is substantially the same. In all the price of the land was $8,000, $2,500 cash, and the balance to be secured by vendor's lien. In the last it is alleged the cash was to be not less than $2,500. The cause of action alleged in each as to whether it is the same cause of action will meet the test laid down by the Supreme Court, in Phœnix Lbr. Co. v. Houston Water Co., 94 Tex. 456, 61 S. W. 707. The original allegations and that added by insertion evidently declare upon the same transaction, and differed only as to the terms and effect of the agency contract. Green v. Loftis, 132 S. W. 507; Burton v. Beyer, 34 Tex. Civ. App. 276, 78 S. W. 248.

[6] The fourth and fifth assignments of error urge that the court should have given the first and second specially requested instructions, which in effect directed a verdict for the appellant, for the reason that the appellee did not make a sale upon the terms upon which the property was listed. The witness, Milam, who testifies he was manager of the real estate department of appellee at the time the property in controversy was listed, and who made the listing contracts, testified:

"On January 18, 1910, it (the lot) was listed at a gross price of $8,000, $2,500 of this to be cash; that is, the cash payment was not to be less than $2,500, and the balance in vendor's lien notes bearing 8 per cent. interest. The Smith Company was to get 5 per cent. on the gross price of $8,000 for making the sale of said property."

This witness further testified that he sold this property to C. P. Dawson and entered into a written contract with him; that Dawson was financially able to buy the property; "he was ready and willing and able to comply with the terms of his contract to purchase said property;" that he informed appellant of the sale and showed him the contract; that appellant said he thought the property would sell for more, but that he was willing to take the price and pay the commission, but that his brother, who was interested with him, was unwilling to take that for the land; that witness, up to the time when appellant refused to deed the land,

did not know that appellant's brother or brother-in-law had any interest in the lot, and asked appellant why he had not told him of that fact. Appellant replied his brother had been willing to sell for that price, but had since refused to take the price and wanted more. This witness testified that:

"I did sell said property on January 22, 1910, to C. P. Dawson. I negotiated the sale selling said property for $8,000, on the following terms: $4,500 cash and the (assumption?) of $3,000 vendor's lien notes, which I understood at the time were outstanding against said property, but later found out that there were none."

Smith, the general manager of the company, testified to the terms of the listing contract substantially as did Milam. Smith says Dawson was willing to pay more cash than agreed upon in the contract; that it was understood there were $3,500 in notes against the property, and that Dawson would have to assume them, but if there were no notes, then Dawson would pay all cash, if appellant wanted it; that he was willing to meet the terms of appellant, and was financially able to do it. Smith says he drew the written contract. There is no testimony showing that there was a contract to sell the land for all cash, or that appellant was ever notified that Dawson would pay all cash. The testimony shows positively he was not present when the purported trade was made between Dawson and the Smith Company. There was in fact no incumbrance on the lot for $3,500, or for any sum of money, and it is not pretended that appellant represented there was. The listing slip offered in evidence shows: "Price $8,000.00 gross; terms, $2,500.00 cash; incumbrance, ———;" and under the word and dash is written, "Bal. $3,500.00 to suit." A written contract was entered into on the 22d day of January, 1910, signed by C. P. Dawson, and "Smith Company by W. H. Milam, Sales Manager's Agent for D. Rabinowitz." This contract recited the land was sold for $8,000, to C. P. Dawson; $4,500 cash, and the "balance in the assumption by Dawson of $3,500.00 incumbrance now against the said property; interest on said notes to be, paid by said Rabinowitz to date of transfer." Four hundred dollars was paid into the hands of the agents. "Balance of cash payment to be made and notes and deed of trust to be executed at once when general warranty deed is presented when property conveyed hereinbefore described. All taxes to be paid up to and including the year 1909; rents to go to grantee to date of transfer." The contract further evidences that 30 days were allowed in which to prepare abstracts and conclude transfer. The rents on the property was $45 per month. C. P. Dawson testified that he entered into a contract as shown by the writing for the purchase of the property, and identified the written contract as the one signed by him. He testified: "I was ready, willing, and able to comply with my contract to purchase said property;"

that he demanded of appellant a compliance with the sale "according to the terms of the contract." Appellant, according to his recollection, refused to deed the property because he had previously sold it. On cross-examination Dawson testified that he had the money to pay the cash called for, and that he was able and willing to comply with his contract. The agents, according to the uncontradicted testimony, were authorized to sell the lot for $8,000, with at least $2,500 cash, balance to be secured by vendor's lien notes, bearing 8 per cent. interest. They made a written contract with Dawson to sell for that price, and to pay $4,500 cash and to assume $3,500 incumbrance, which in fact had no existence. The appellant, under the contract, could not have compelled the execution of such note. He, according to appellee, stipulated that he should have vendor's lien notes. The appellees made no contract requiring the purchaser to execute such notes. Again, the appellee was not authorized to give the purchaser the rents on the property until the matter was closed up. Ordinarily, a proposed purchaser gets the use of his money and the proposed seller the use or rents of his property until the trade is finally consummated. It is certain a written contract was not executed according to the terms the agents were authorized to give the purchaser. The Smith Company failed to pursue the authority given them; therefore no valid sale was made. It was required to strictly pursue the method and the power granted it in the listing contract. This it did not do, and therefore was not entitled to commissions to a sale it never made. Colvin v. Blanchard, 101 Tex. 231, 106 S. W. 323; Pryor v. Jolly, 91 Tex. 86, 40 S. W. 959; Evants v. Fuqua, 102 Tex. 430, 118 S. W. 132, 132 Am. St. Rep. 892; Hagler v. Ferguson, 102 Tex. 432, 118 S. W. 133, 133 Am. St. Rep. 895; Henderson v. Gilbert, 171 S. W. 304; Caldwell v. Scott, 143 S. W. 1193.

Appellee apparently insists that if the contract was not in accordance with the terms given it, a purchaser was nevertheless found who was willing, and able, to pay all cash, which would be within the terms of the listing contract. Dawson may have been willing to pay cash, but he did not so contract, and the appellant could not have forced him to do so. Hagler v. Ferguson, and Evants v. Fuqua, supra. Both Milam and Dawson testified that Dawson was willing and able to take the land according to the terms of the contract made. Smith testifies that Dawson wanted to pay cash, but could not do so because of the incumbrances. The agent never so notified appellant, and Dawson never agreed to pay cash or entered into any such contract. It was incumbent upon appellee to show a sale in accordance with their authority in the listing contract, and this was not done.

The fourth, fifth, and eight assignments are sustained.

It will be unnecessary to notice other assignments. The case will be reversed and rendered for the appellant.