HUTCHINGS v. BINFORD et al.   (No. 1411.)

(Court of Civil Appeals of Texas. Amarillo. Nov. 20, 1918.)

1. BROKERS ⊖57(1)—LOAN BROKER—RIGHT TO COMMISSION—DEPARTURE FROM TERMS.

Loan broker, employed by landowner to procure loan to take up loan against land and debt due state, who procured company to offer loan, but on such conditions that proceeds were not available to pay state incumbrance, while provision for maturity of debt on contingency was departure from landowner's terms, did not earn commission.

2. BROKERS ⊖57(1)—LOAN BROKER—RIGHT TO COMMISSION—WAIVER OF TERMS BY BORROWER.

A waiver, by borrower, of departure in terms of loan offered from that authorized to be nego-

tiated by loan broker, to be operative must be supported by agreement on valuable consideration, or be such as to estop him from insisting on strict performance of contract.

3. BROKERS ⊖57(1)—LOAN BROKER—WAIVER OF DEPARTURE FROM TERMS.

Waiver by borrower of loan broker's departure from terms of loan authorized by him is operative only where borrower has knowledge, actual or constructive, of the facts.

4. BROKERS ⊖57(1) — LOAN BROKER — BORROWER'S WAIVER OF DEPARTURE IN.

Landowner, who employed loan broker to procure loan secured by land, had right to assume, in connection with his claimed waiver of departure in terms of loan offered by company from that authorized, that terms embodied in papers sent to a bank by the lending company for execution conformed to his application.

5. BROKERS ⊖57(1)—LOAN BROKER—DEPARTURE IN TERMS OF LOAN PROCURED — WAIVER.

Landowner, who employed loan broker to procure loan secured by land to take up previous loan against it and debt due state, held not to have waived departure, in terms of loan offered by company, from that authorized to be negotiated, by refusal to proceed further with loan on the ground he had secured one elsewhere.

6. BROKERS ⊖57(1)—LOAN BROKERS—RIGHT TO COMMISSION—VARIANCE.

Borrower had right to vary terms of loan procured for him by a broker, and, if he accepted contract as varied, broker was entitled to commission; but variance must have been knowingly made, to bind the borrower.

Appeal from Oldham County Court; Wm. Balfour, Judge.

Suit by C. P. Hutchings against Angelica Binford and others. Judgment for defendants, and plaintiff appeals. Affirmed.

C. E. Gustavus, of Amarillo, for appellant. Kimbrough, Underwood & Jackson, of Amarillo, for appellees.

BOYCE, J.   This suit was brought by C. P. Hutchings, a loan broker, to recover commission for services in procuring a loan of $40,000 for Thaddeus Binford, now deceased, to be secured by land in Oldham and Deaf Smith counties, Tex. The defendants, appellees here, were sued as heirs of Thaddeus Binford, under allegations that obviated the necessity for an administration and authorized the maintenance of this suit against such heirs. The facts are practically undisputed, and under these liability for the payment of commission is dependent on whether the proposed loan secured was in accordance with the terms upon which appellant had been authorized to secure it, and if there was a departure from the terms of this proposed loan, from the terms of the loan he was authorized to secure, whether Thaddeus Binford had, by his conduct, waived the variance.

Appellant having been authorized to secure a loan under an agreement for a commission of $400, to be paid for such services, entered into negotiations with the Missouri State Life Insurance Company, which resulted in Thaddeus Binford making written application to said company for a loan, which appli-

cation, we take it, embodied the terms of the loan which appellant was to procure under his employment. According to this application and some modifications agreed upon by the parties, the loan was to be for $40,000, payable January 1, 1927, with privilege of payment of certain parts of the principal before maturity after January 1, 1922, bearing interest at the rate of 7 per cent. per annum. payable annually, to be secured by first mortgage on 10,000 acres of land in Deaf Smith and Oldham counties. In this application a question was asked and answered as follows:

"Q. For what purpose is this loan desired? A. To take up loan now against land and state debt."

In answer to another question in the application, it was stated that—

"The only incumbrance against this land is deed of trust of $30,000, held by Geo. Hotchkiss, and state debt of $6,000, which incumbrance is to be paid from the proceeds of this loan."

Abstracts of title were submitted to the insurance company and considerable delay incurred in meeting objections made to the title. Finally, the insurance company prepared notes and deed of trust for execution by Binford and sent them, with checks payable to Binford, to the First National Bank of Amarillo, with instructions to deliver the checks upon execution of the papers by Binford, and subject to certain other conditions. Among these conditions was one that nothing was to be done with such checks until the bank should "first receive patents from the state of Texas to the borrower or some one in his chain of title" to the land on which there remained a balance due the state. The deed of trust, among other provisions, contained a stipulation to the effect that if any tax should be imposed or assessed within the state of Texas against the interest of the trustee, or the beneficiary of the trust, in said premises, or against the debt or notes secured thereby, while held by a nonresident, then the whole indebtedness should, at the option of the legal holder of said notes, become immediately due and payable, etc. The deed of trust contained other provisions which it is claimed were not contemplated by the terms of the application, but which we need not notice. The negotiations in behalf of T. Binford, who lived in Iowa, had been conducted by his son, who resided in Texas, who, it appears, did not keep his father advised of the facts causing the delay or the progress made in closing said loan. The said T. Binford, in the meantime, had made application to secure the money he needed elsewhere, and when he was notified that the papers aforesaid were at the Amarillo bank, ready for closing, he did not examine them, but declined outright to proceed further with the loan, on the ground that he had made other arrangements to secure the money.

[1-6] We think it clear that the terms and conditions of the loan as proposed by the papers tendered Binford for execution, and instructions to the bank accompanying them, did not correspond to the terms and conditions of his application. Under the instructions to the bank the proceeds of the loan were not available to pay the state its incumbrance, and thus secure the patents which were made a condition precedent to the use of such funds at all. In order to have complied with such conditions, Binford would have been required to secure $6,000 elsewhere, and one of the expressed purposes of the loan would have been defeated. We think, also, that the provision for the maturity of the indebtedness upon the contingency above referred to was a departure from any terms of the loan which appellant was authorized to procure. It is not shown that the life insurance company was willing to make the loan on any other terms or conditions, so that appellant cannot, we believe, successfully assert that it is shown that he procured a loan to be offered on the terms upon which he was authorized to procure it. Colvin v. Blanchard, 101 Tex. 231, 106 S. W. 323; Evants v. Fuqua, 102 Tex. 430, 118 S. W. 132, 132 Am. St. Rep. 892; Moss & Raley v. Wren, 102 Tex. 567, 113 S. W. 739, 120 S. W. 847; Rabinowitz v. Smith Co., 190 S. W. 201. The only question then is: Whether Thaddeus Binford, by his refusal to proceed further with the loan, on the ground that he had secured a loan elsewhere, waived this departure in the terms of the loan offered from that authorized to be negotiated. "A waiver, to be operative, must be supported by an agreement founded on a valuable consideration, or the act relied on as a waiver must be such as to estop a party from insisting on a performance of the contract or forfeiture of the condition." Insurance Co. v. Lacroix, 45 Tex. 168; Cyc. vol. 40, p. 263. Waiver is also only operative where the person charged with the waiver has knowledge, actual or constructive, of the facts. Cyc. vol. 40, pp. 255, 256. Thaddeus Binford did not examine the terms of the loan contract proffered him, and had no knowledge thereof, unless it could be said that he was charged with knowledge thereof on the theory that it was his duty to examine them to see whether they conformed to his application. He had the right to assume, and doubtless did, that the terms of the loan embodied in the papers sent to the bank for execution were in conformity with his application. If he was ignorant of any departure from the terms of the application, such ignorance was, in a large measure, due to the fault of the loan company in varying the terms of the application. Under these circumstances, it does not seem to us that he could be properly chargeable with knowledge of these departures from the contract, which he had no reason to suspect existed. There certainly was no consideration for any waiver, nor is it suggested by the evidence that, if these objections had been seasonably made, they

could or would have been obviated. So that the elements of estoppel do not seem to be present. He had the right, of course, if he saw fit to do so, to vary the terms of the loan contract, and, if it was accepted on such varied terms, the loan broker would have been entitled to his commission; but, of course, this agreement for a variance, in order to bind him, must have been knowingly made. Therefore we do not see how it can properly be said that Thaddeus Binford waived the difference in the terms of the proposed contract.

There are many cases which hold that where the contract, or thing tendered in performance of a contract, is examined and rejected, because it does not come up to the contract in certain stated particulars, the party to the contract making the objection thereby waives any others; he has by his acts impliedly agreed to the variance from the contract in other particulars. Mechem on Sales, vol. 2, § 1077. There are still other cases which hold that where the contract or thing offered in performance is examined by one of the parties to the contract and is subject to defects or objections, which if suggested could be obviated, and such party refuses performance and breaks off negotiations on grounds wholly disconnected with any such defect or objection, but in entire repudiation of any obligation of contract, then such party has waived his right to urge such objections. The cases of Johnson v. Stewart & Hay, 171 Mo. App. 543, 153 S. W. 511, and Fiske v. Soule, 87 Cal. 313, 25 Pac. 431, are illustrative of this class of cases. The true solution of cases of this character would, it appears to us, be dependent upon a determination of the question as to whether any "duty to speak" rests upon the party, and this "duty to speak" would doubtless depend largely upon the circumstances of each case. At any rate, appellant's case does not fall within these decisions. It is not to be denied that many general expressions may be found in the authorities which support the appellant's position. C. J. vol. 9, p. 627, and authorities there cited. An examination of these cases will disclose that most of these statements occur in the character of cases we have already been discussing, though there are some cases that in fact, as well as in pronouncement of rule, support such view. The case of Stanton v. Barnes, 72 Kan. 541, 84 Pac. 116, does directly support appellant's position. In that case it was held that a principal having refused to close a deal with a purchaser tendered by a broker with whom he had listed the property, assigning as a ground for such refusal that the property belonged to his wife and he had no authority to sell it, could not show, when sued by the broker for commission on the transaction, that such proposed purchaser was not able to buy the property. The cases of Mutchnick v. Davis, 130 App. Div. 417, 114 N. Y. Supp. 997, and Bryant v. Thesing, 46 Neb. 244, 64 N. W. 967, are in conflict in principle with said case. The case of Rabinowitz v. Smith Co., 190 S. W. 200, 201, is in point on the facts decided, though the question of waiver is not discussed. In that case it was held that the broker, who had made a sales contract embodying a term not authorized by his contract of employment, could not recover, though the contract was submitted to the owner, who made no objection to the particular term, but refused to complete the sale, on the ground that his brother, who owned an interest in the land, had decided not to accept such price for it. In the case of Colvin v. Blanchard, 101 Tex. 231, 106 S. W. 323, the only difference between the terms of the enlistment for sale and the contract made by the broker was that the notes for the deferred payments, as provided by the contract, were to read "on or before," when this was unauthorized under the contract of enlistment. This contract was submitted to the owner, who "simply remained silent and ignored the transaction," which, of course, was tantamount to a refusal to proceed with the sale. It was held that "he was not called upon to take any action in the premises," and that he did not by such action ratify the unauthorized provision of the contract so that the broker had not earned his commission.

The reason assigned by Thaddeus Binford in refusing to proceed further with the consummation of the loan, to wit, that he had secured the money elsewhere, amounted to a breaking off of the negotiations without reference to whether the papers which he was asked to sign did or did not meet the requirements of the terms of the loan which appellant was to secure for him. He did not attempt to pass on the sufficiency of these papers, and his acts are no more an approval of the terms and provisions of the loan contract than if he had remained silent or refused generally to proceed with the loan. We think the plaintiff failed to make out his case, in that he did not show that he had procured a loan on the terms upon which he was authorized to procure it, since the loan contract tendered was not in accordance with these terms, and the facts are insufficient to show that Binford ratified or approved this departure.

This conclusion renders it unnecessary to consider other questions raised by appellant, and results in an affirmance of the judgment of the court below.