# JANUARY, 1908.

## G. H. & O. V. COLVIN v. J. T. BLANCHARD.

### No. 1772. Decided January 8, 1908.

**1.—Land Agent—Authority to Sell.**

A letter to land agents concerning real property of the writer which had previously been placed in their hands to sell, saying: "I will sell the lots for $19,000, and pay you 5 percent commission plus $50, or $1,000 commission in all, for making the sale" was sufficient to authorize them as agents to bind him by a contract to sell on the terms specified in the letter. Watkins Ld. & Mtg. Co. v. Campbell, 100 Texas, 542, distinguished. (Pp. 234, 235.)

**2.—Same—Terms of Sale—Long Time Notes.**

An authority to land agents to sell lots for a named sum in cash and the "balance long time," was not followed in a contract for sale by them making the five notes for the deferred payments due "on or before" 1, 2, 3, 4, and 5 years from the sale, and the owner was not bound to perform such contract. (Pp. 235, 236.)

**3.—Agency—Contract—Disaffirmance.**

A land owner who, on being informed of a contract for its sale made by

his agents, but departing from the terms on which they were authorized to sell, neither expresses approval nor disapproval of their action, does not ratify the sale by his mere silence.    (P. 236.)

Error to the Court of Civil Appeals for the Second District, in an appeal from Tarrant County.

Colvin sued Blanchard for specific performance or damages.    Defendant had judgment.    Plaintiffs appealed, and on affirmance obtained writ of error.

*Orrick & Terrell,* for plaintiffs in error.—The court erred in holding that the defendants did not authorize the agents, Gilliland & Harwood, to sell his property, and that the sale as made was unauthorized by him.    Fisher v. Bowser, 41 Texas, 222; Story on Agency, 298, note 1; Worral v. Mynn, 5 N. Y., 229; Despatch Line Co. v. Bellamy Mfg. Co., 37 Am. Dec., 203; Talbot v. Bowen, 1 A. K. Marsh., 436; Malone v. McCullough, 15 Colo., 460; Jackson v. Murray, 5 T. B. Mon., 184; Blacknall v. Parish, 6 Jones Eq., 70-78; Curtis v. Blair, 26 Miss., 309.

It is the duty of the principal when informed of the unauthorized acts of his agents to at once repudiate such act; otherwise by his silence and acquiescence therein a ratification will be inferred, especially when he has delegated some authority to such agent, and unless within a reasonable time after receiving notice of the facts of the transaction which the agent has made in his name he repudiates them, he is deemed in law to have approved and to have made them his acts.    Mech. on Agency, secs. 153, 155, 157; Story on Agency, secs. 253, 256, 258; Reese v. Medlock, 27 Texas, 120; Rutherford v. Montgomery, 37 S. W. Rep., 625; Bank v. Rhodes, 82 S. W. Rep., 739; Dana v. Turlay, 35 N. W. Rep., 860; Alaska, Chicago Com. Co. v. Solner, 123 Fed. Rep., 855; Walker v. Walker, 7 Baxt., 260; Minn. Linseed Oil Co. v. Montague & Smith, 65 Iowa, 72, 73; Foster v. Rockwell, 104 Mass., 172; Lyle v. Addicks, 49 Atl. Rep., 1121; Robbins v. Blanding, 91 N. W. Rep., 844; Stearns v. Johnson, 19 Minn., 540; Law v. Cross, 1 Black (U. S.), 533-540; Harrod v. McDaniels, 126 Mass., 415; Hoosac Mining Co. v. Donat, 16 Pac. Rep., 157; Saveland v. Green, 40 Wis., 438; McWhinne v. Martin, 77 Wis., 197; Curry v. Hale, 15 W. Va., 875; Bredin v. Dubarry, 14 S. & R., 30; Kehlor v. Kemble, 26 La. An., 713; Crane v. Bedwell, 25 Miss., 507; Fort v. Coke, 11 Heisk., 580; Ward v. Williams, 26 Ill., 447; Lee's Admrs. v. Fontaine, 10 Ala., 770, 771.

When Blanchard was notified of the terms of the contract of sale, he also was notified that the improvements upon the lots sold by him and owned by Vickery and Berry had been sold to the same purchaser that his lots had been sold to.    It thereby became Blanchard's duty to repudiate his agent's acts at once if he desired to do so, and not to delay, for by so doing he ratified such acts.    2 Pomeroy, Equity, sec. 965, p. 1404; Dana v. Turlay, 35 N. W. Rep., 860; Law v. Cross, 1 Black, 533-540.

With reference to the proposition that notes taken to read "on or before" would destroy the limitation placed by Blanchard in his letter upon the authority of his agents, to wit, the long time notes, we

would say that the cases of Buchanan v. Wren, 30 S. W. Rep., 1079, Mattson v. Marks, 31 Mich., 421; Wright v. Morgan, 37 S. W. Rep., 628; Chicago Ry. Equip. Co. v. Mechanic's Bank, 136 U. S., 268, would seem to us as settling the question both in the reasoning which they employ as well as in the principle decided.

*W. B. Paddock,* for defendant in error.—The listing of property with a real estate broker or agent for sale does not authorize him to execute a contract binding on his principal for the sale of real estate. A person who deals with a special agent is charged with notice of the limited authority granted such agent and is bound to inquire as to his authority when such agent assumes to act for his principal. Fisher v. Bowser, 41 Texas, 222; Donnan v. Adams, 71 S. W. Rep., 580; O'Brien v. Gilliland, 23 S. W. Rep., 244; Collins v. Durward, 23 S. W. Rep., 561; Meston v. Davies, 36 S. W. Rep., 805; Glass v. Rowe, 15 S. W. Rep., 334; Buzard v. Jolly, 6 S. W. Rep., 422; Baker & Co. v. Kellett, 84 S. W. Rep., 661; Carstens v. McReavy, 25 Pac. Rep., 471; Armstrong v. Lowe, 18 Pac. Rep., 758; Everman v. Herndon, 15 So. Rep., 135; Hamlin v. Schulte, 18 N. W. Rep., 415; Morrill v. Davis, 43 N. W. Rep., 1146; O'Reily v. Keim, 34 Atl. Rep., 1073; Keim v. Linley, 30 Atl. Rep., 1063; 1 Am. & Eng. Ency. of Law, 987-994, 1008; Mechem on Agency, sec. 966; Pomeroy on Specific Performance, sec. 77.

Silence in failing to repudiate act of agent will not work a ratification; and if act of agent void, ratification can not be implied. Reese v. Medlock, 27 Texas, 129; Meyer v. Smith, 21 S. W. Rep., 997; Meston v. Davies, 36 S. W. Rep., 805; Williams v. Moore, 58 S. W. Rep., 953; Iron City Bank v. Fifth Bank, 47 S. W., 535; Iron City Bank v. Fifth Bank, 49 S. W. Rep., 368; Story on Contracts, sec. 162.

MR. JUSTICE BROWN delivered the opinion of the court.

The Honorable Court of Civil Appeals made a meagre statement of this case and we are under the necessity of looking to the undisputed facts, from which we made the following statement. For a number of years Blanchard had owned the property in controversy and for at least one year prior to the transaction in question Gilliland & Harwood had been authorized by Blanchard to sell the lots. It seems, from the evidence, that the property had been advanced in price from time to time but no sale was made, and, on the 7th day of July, 1905, Gilliland & Harwood wrote a letter to Blanchard, which, however, was not in evidence, nor was its contents proved on the trial. On the 10th day of July, 1905, Blanchard replied as follows: "Milwaukee, July 10, 1905. Gilliland & Harwood, Fort Worth, Texas. Gents: Replying to yours of 7th inst., I beg to say that I will rent the building now occupied by L. G. Gilbert for $160.00 per month. I will sell the lots for $19,000 and pay you 5 percent com. plus $50, or $1,000 com. in all, for making the sale. In other words, I want $18,000 net for my lots. Terms $3,000 cash, bal. long time. I hope you will find a renter for the building. Let me hear from you. Yours truly, J. T. Blanchard."

After receiving the above letter, Gilliland & Harwood sold the lots to the plaintiffs in error for $23,500.00; $4,500.00 of which was to be paid to other parties for the house, which did not belong to Blanchard, and $19,000.00 was to be the price of the lots, $3,000.00 being paid in cash and the remainder secured by five notes payable in 1, 2, 3, 4 and 5 years. The first four notes being for the sum of $3,000 each and the fifth note for the sum of $4,000. Each note was payable "on or before" the date stated therein. On the 17th day of July, 1905, Gilliland & Harwood reported by letter the sale made to the plaintiffs in error, but no answer was received, and Gilliland & Harwood were informed by Blanchard's wife that he was absent from home. The deed for his signature was sent by express to Blanchard at his home, also a copy of the contract was sent by mail, but no answer was received by Gilliland & Harwood to their communication at any time. On October 24, 1905, Blanchard wrote this letter:

"Milwaukee, Wis., Oct. 24, 1905. Mr. G. H. Colvin, Fort Worth, Texas. Dear Sir: I have before me a letter from Gilliland & Harwood of your city, in which they say they sold my Main street lots to you for $19,000; $3,000 cash, the balance, $16,000, to be evidenced by five notes in the sums of $3,000 the first year, $3,000 in two years, $3,000 in three years, $3,000 in four years and $4,000 in five years; notes bearing five per cent. interest payable annually, and notes to state 'on or before.' Please inform me if this is correct, and oblige, Yours very truly, J. T. Blanchard."

G. H. Colvin replied October 27, 1905, as follows: "Fort Worth, Texas, Oct. 27, 1905. Mr. J. T. Blanchard, Milwaukee, Wis. Dear Sir: Your letter of the 24th at hand and noted. It is a fact that I purchased your two Main street lots from your agents, Gilliland & Harwood, for $19,000 in accordance with the contract, a copy of which was forwarded you by them per express. Said contract was duly filed for record here in the County Clerk's office. Yours truly, G. H. Colvin."

Nothing more was heard from Blanchard about the matter until about January, 1906, when, being in the city of Fort Worth, Gilliland met him and took him to Colvin's office to talk over the matter of the contract for sale. Colvin asked Blanchard what objection he had to the contract, but he testified that Blanchard only said the interest is a little low, or something to that effect. Colvin offered to pay 6% on the notes, according to the terms of the contract, and give his notes at that rate, and he offered to pay the money in cash, but Blanchard ignored the contract and made no answer.

Suit was brought by G. H. & O. V. Colvin in the District Court of Tarrant County for a specific performance of the contract, or in the alternative, for damages for breach thereof.

The Honorable Court of Civil Appeals erred in holding that Gilliland & Harwood had no authority under the letter of Blanchard to make sale of the lots to Colvin. The letter from Blanchard to Gilliland & Harwood, dated July 10, 1905, used this language: "I will sell the lots for $19,000 and pay you 5% com. plus $50; or

$1,000 com. in all for making the sale." In connection with this, the fact, that Gilliland & Harwood had previously been authorized to sell the same property, necessarily gives the meaning to this language that the said Gilliland & Harwood were authorized to make sale of the land, otherwise how could Blanchard pay them a commission, *"for making the sale."* The Honorable Court of Civil Appeals refers to Watkins Land & Mortgage Co. v. Campbell, 100 Texas, 542, 101 S. W. Rep., 1078, as authority for the construction that court placed upon the language of Blanchard's letter. But an examination of the facts of that case, as stated in the opinion, will show that this court rested its decision upon the proposition, which was manifest by the correspondence, that the land agents in that case were making a proposition to the Land & Mortgage Company on behalf of another party whom they represented as "our purchaser" and that the Land & Mortgage Company so regarded it is evident from this reply: "We have yours of the 14th submitting an offer of $1,800.00; $300.00 cash and the balance on time, etc. If you could get the amount of *your cash payment* increased to $600.00 we would be willing to accept the offer, etc." This clearly shows the proposition coming from Wilson & Lightfoot was not made as agents of the Watkins Land & Mortgage Company and that the reply did not authorize them to accept the proposition, but states distinctly, "We would be willing to accept the offer." Subsequent correspondence supported the construction by this court. This case is clearly distinguishable from the case of Watkins Land & Mortgage Company v. Campbell.

However, we must affirm the judgment of the court below in this case, because the agents, in making the sale, did not observe the limitation of their authority expressly stated in the letter which conferred that power. Mr. Pomeroy expresses the rule applicable to this case as follows: "Where the delegation of authority is express and special, and the other party dealing with the agent can not fall back on any larger implied powers, the limitations may relate to the manner and form of executing the contract, as well as the substantial terms which it shall contain; and in such a case the agent must keep within the restricted authority conferred upon him and strictly pursue the method prescribed by his instructions." (Pomeroy, Specific Performance, 114, sec. 77; Thomas v. Joslin, 30 Minn., 388; Holbrook v. McCarthy, 61 Cal., 216.) In the letter of authority in this case Blanchard prescribed the terms on which the sale should be made, that is, $3,000 in cash and the remainder on long time notes. Possibly the notes running from one to five years might be considered long time notes, but the words "on or before" placed in each of the said notes gave the maker the privilege of paying them at any time he might choose and they did not comply with the terms of the authority because they were not long time notes, so far as Blanchard was concerned. The maker could make them long time or short time at his option, but the payee of the notes had no option but to accept the money on any day that it might be tendered to him; or, at the option of the maker, the payee must wait until the last day named. The purpose which prompted

Blanchard to make "long time notes" one of the terms of sale would be unimportant in this case except that it serves to explain what was intended by him in the use of the phrase, "long time notes." It was consistent with good business policy for Blanchard to desire that the property which he was converting into negotiable paper should bring him an income secured by the lien for a term of years rather than to have it paid in cash with the uncertainty of reinvestment. For purposes of use as commercial paper such notes would be less desirable than those he specified. Whatever may have been his purpose, the terms of the authority are plain and unmistakable and the failure to comply with them is equally plain.

There are no acts on the part of Blanchard which could be construed into a ratification. As he had a right to do and as was prudent for him under the circumstances, he refrained from expressing himself with regard to the matter; he was not called upon to take any action in the premises. He simply ignored the transaction after he received the information which he sought from Colvin. Under the circumstances of this case his silence could not be construed into a ratification of the contract and it was not so understood by the parties as is shown by the testimony of Colvin himself, who stated that, when Blanchard was in Fort Worth in January following, he had a conversation with him in which Blanchard declined in every way to discuss the matter or to express any opinion of preference one way or the other. Because Gilliland & Harwood failed to pursue the authority given them no valid sale was made, and the plaintiffs in error showed no right to the relief sought. The judgments of the District Court and Court of Civil Appeals are affirmed.

*Affirmed.*