BARNARD et al., Appellants, v. TIDRICK, Respondent.

(152 N. W. 690.)

(File No. 3584.   Opinion filed May 17, 1915.)

1.  **Sales—Sale of Corporate Stock—Fraudulent Representations, Sufficiency.**

   In a suit on a note defended against on the ground of fraud in connection with the consideration thereof, **held**, that representations by the agent of a corporation selling corporate stock that it had assets of over $1,000,000, was paying 20 per cent. dividends, and was transacting business in all but two states, when, in fact, its assets did not exceed $100,000, it had never paid or earned dividends, and had not gone into business in eight state, were sufficient to avoid the note given for purchase price of the stock.

2.  **Appeals—Error—Fraud—Verdict, Conclusiveness of on Conflicting Evidence.**

   The verdict of a jury upon an issue of fraud, on conflicting evidence, is conclusive unless vitiated by errors in instructions or rulings on the trial.

3.  **Negotiable Instruments—Fraud as Defense—Innocent Indorsee—Burden of Proof.**

   When it appears that a note was obtained by fraud or without consideration, the burden is on an indorsee to show that

he was an innocent purchaser for value before maturity, in good faith, in ordinary course of business.

4. **Negotiable Instruments—Consideration—Indorsee—Notice of Infirmity, Sufficiency.**

The statement by a maker of a note for the purchase price of corporate stock, in the presence of the president of the corporation payee, and an individual to whom the note is subsequently indorsed, directing the president not to transfer the note, because the defendant as maker had received no stock, and did not propose to pay the note, held, sufficient to put the other on inquiry and charge him with notice of infirmities in inception of the note.

5. **Sales—Corporate Stock for Note—Consideration—"Purchase and Sale"—Delay of Certificate—"Agreement to Sell and Buy"— Instructions—Defense to Note.**

Where a corporation agreed, in consideration of a note executed to it, to deliver to defendant as maker certain of its stock certificates, held, the contract was one of purchase and sale under Civ. Code, Sec. 1304, defining an agreement to sell and buy as a contract to transfer title to a thing to another who engages to accept same and pay a price therefor, and was also an agreement for the delivery of the certificates, and an instruction to the effect that if there was no delivery there was a failure of consideration, was not erroneous; and failure to deliver the stock was a good defense to the note.

6. **Sales—Transfer of Title—Intent of Parties—Question of Law, When.**

The transfer of title on a sale depends on the intention of the parties, and, where the facts are so clear as to justify but one conclusion, is a question of law.

7. **Same—Transfer of Title—Corporate Stock—Delivery of Stock Certificates, Necessity.**

Where a contract of sale of corporate stock required delivery of the stock certificates, held, that, while the certificates may under some conditions be considered merely evidence of title to the stock, yet, under such contract the title to the stock would not pass until delivery of the certificates.

8. **Appeals—Error—Harmless Error—Other Issues—Right to Recover.**

In a suit involving the failure of consideration of a note, held, that where no recovery could be had by the assignee, errors concerning evidence or instructions, relating to other branches of the case, are not prejudicial.

Appeal from Circuit Court, Brule County. Hon. FRANK B. SMITH, Judge.

Action by Frederick Barnard and another, partners as Barnard & Miller, v. C. D. Tidrick, to recover against an indorsee on a promissory note. From a judgment for defendant, and from an order denying a new trial, plaintiffs appeal. Affirmed.

*Brown & Brown,* for Appellants.

*Joe Kirby,* for Respondent.

(1) Under point one of the opinion, Respondent cited: Blount v. Medbery, 16 S. D. 562; Taylor v. National Bank, 6 S. D. 511; Fargo Gas Light, etc., v. Elec. Co., 37 L. R. A. 593; Liland v. Tweto, 125 N. W. (N. D.) 1032-8.

(3) Under point three of the opinion, Respondent cited: Joyce Defences Comm. Paper, Sec. 222; Hill v. Buckminster, 5 Pick. (Mass.) 390; Cochran v. Perkins, 40 So. (Ala.) 351; Sawyer v. Wiswell, 9 All. (Mass.) 39; Adams v. Ashman, 53 Atl. (Pa.) 375; Landouer v. Improvement Co., 10 S. D. 205; Alabama Natl. Bank v. Halsey, 19 So. 522.

(4) Under point four of the opinion, Appellant cited: 21 Am. & Eng. Ency. of Law, (2d Ed.) 587.

(5) Under point five of the opinion, Appellant cited: Mitchell v. Beckman, 28 Pac. 110 (Cal.); Marling v. Fitzgerald, 120 N. W. 388 (Wis.); 6 Am. & Eng. Ency. of Law, (2d Ed.) 707-709; Bower v. Jones, 26 S. D. 414.

(7) Under the seventh point in the opinion, Appellant cited: Columbia Electric Co. v. Dixon, 49 N. W. 244 (Minn.)

SMITH, J. On April 1, 1912, defendant executed and delivered to the United Mercantile Agency of Chicago eight notes of $2,500 each, due August 1, 1912. This action was brought to recover on a note dated August 1, 1912, which note was given as a renewal of one of the eight notes above mentioned, and was indorsed to the plaintiff who claimed to be an innocent purchaser. Defendant admitted the execution of the note, but alleged that the note of April 1, 1912, which was the only consideration for the note in suit, was obtained from defendant without consideration and by fraud and deceit; that the United Mercantile Agency offered to sell to defendant 250 shares of its capital stock at the par value of $10 per share, and did, in order to induce defendant to purchase the same and give said note therefore, to him represent that it was a live, going concern; that it had actual assets worth, on the market, over $2,000,000; that it was

free of debts; that it was engaged in furnishing general mercantile reports, and had already compiled and scheduled all the mercantile interests in the United States, except two New England states, namely Massachusetts and Connecticut; that it had its offices organized in the different states for carrying on and transacting said business; that its stock was selling on the market much above par, and was then earning net dividends of more than 20 per cent. on the par value of the stock. Defendant further alleged that he relied on such representations, and, relying thereon, did purchase said stock, and executed and delivered said note therefor; that the company agreed to forwith issue and deliver to defendant 250 shares of its preferred stock; that all the said statements and representations were false and untrue, and were made to induce defendant to execute said note; that said United Mercantile Agency was not a going solvent institution, but was insolvent; that it had not listed the mercantile interests of the United States, except two states, but had failed to list all of the New England states, as well as New York and Pennsylvania; that it was not earning 20 per cent. dividend, or any dividend whatever; that it did not have $2,000,000 of assets, nor to exceed $100,000 assets, and those were of doubtful character; that no stock was ever issued or delivered to this defendant; that the whole purpose of procuring said note was to swindle and defraud the defendant; and that plaintiffs were acquainted with the purpose for which said note was given, and the conditions under which the same was obtained from this defendant.

Two issues of fact were thus presented at the trial: First, was there such fraud and misrepresentation in the inception of the note of such failure of consideration therefor as would defeat a recovery thereon, by the original payee; and second, were the plaintiffs innocent purchasers in due course, and for value before maturity?

It stands undisputed in the record that this note was indorsed and delivered to the plaintiffs before maturity, either in payment of, or as security for, an indebtedness of the original payee to the plaintiffs.

[1] At the trial but two witnesses testified as to the statements and representations made at the time the note was executed —one the defendant himself; the other the agent who negotiated

the sale of stock and procured the note. The testimony of these witnesses was conflicting in many important particulars. That of the defendant himself quite fully sustained the allegations of the answer as to representations made to him by the selling agent. The selling agent himself, as well as one of the officers of the company, testified that the United Mercantile Agency had never earned any dividends whatever. Such misrepresentations would be sufficient to avoid the note. Alabama Nat. Bank v. Halsey, 109 Ala. 196, 19 South. 522.

[2] The verdict of the jury upon the issue of fraud in the inception of the note was for the defendant, and is final and conclusive, unless vitiated by errors in the instructions of the court, or by erroneous and prejudicial rulings upon evidence.

[3] When it appears that the note was obtained by fraud or without consideration, the burden of proof is cast upon plaintiffs to show that they were innocent purchasers for value before maturity, in good faith, and in the ordinary course of business. Landauer v. Imp. Co., 10 S. D. 205, 72 N. W. 467; Ala. Nat. Bank v. Halsey, supra.

[4] The testimony shows that prior to the time plaintiffs received the Tidrick note they had accepted from the Mercantile Agency in payment of, or as security for, the same indebtedness to plaintiffs, certain notes of another party, in the amount of $2,500 which notes were due and unpaid. The defendant Tidrick testified that in the latter part of August he was in the office of Mr. Early, president of the Mercantile Company, in Chicago; that Mr. Miller, one of the plaintiffs came into the office and spoke about having such notes; that Mr. Early said:

" 'Well, here is Mr. Tidrick from South Dakota. He knows Vessey is all right.' He asked me if I knew Vessey. I said, 'Yes; I know Vessey,' and Early said Vessey's note was good, and he says, 'Here is another man from South Dakota; he is interested in the concern here, and we could turn you his notes,' and I said, 'You don't turn any notes over, because I haven't got any stock, and I am getting a little sore on this institution anyhow, and I don't propose to pay them.' "

That this was addressed to Mr. Miller and Mr. Early.

These statements were denied by both Miller and Early. The credibility of these witness, however, was a question for the

jury.    Iowa Nat. Bank v. Sherman & Bratager, 19 S. D. 238, 103 N. W. 19, 117 Am. St. Rep. 941; McGill v. Young, 16 S. D. 360, 92 N. W. 1066.  Upon this issue of fact we must accept the finding of the jury.  Such a statement by the maker of the note to a prospective indorsee was sufficient to put him on inquiry and to charge him with notice of infirmities in the inception of and as to whether there was any consideration for the note.

[5] Was there error in the instructions to the jury?  The trial court, among other things, instructed the jury as follows:

"Until they [the United Mercantile Agency] delivered the stock to him, they have no claim on him at all.  * * *  The whole question, so far as that proposition is concerned, is:  Did he get the stock it was understood he should have for the execution of this note?  If he did not, of course there would be no valuable consideration."

This instruction is assigned as error.  If the plaintiffs are not innocent purchasers of the note, they stand in exactly the same position as would the United Mercantile Agency, if suing upon the notes.   Appellant contends that the failure to deliver the stock is no defense to an action on the note, citing Columbia Electric Co. v. Dixon, 46 Minn. 463, 49 N. W. 244.  That case held, in effect, that it was no defense to an action on a stock subscription that no certificate for the stock had been tendered. The ground upon which that decision rests is that a subscription for the stock of a corporation does not stand on the footing of a purchase of property; that, when the subscriber pays, he is the owner of the stock; that it is the payment which makes him a stockholder, the certificate being merely the evidence of his right.

But in the later case of Marson v. Deither, 49 Minn. 423, 52 N. W. 38, that court reviewing the Dixon case and other prior decisions, says:

"The rule, of course, has no application to the case of a sale of stock, which stands on the same footing as any other contract of purchase of property."   Summers v. Sleeth, 45 Ind. 598.

In the latter case the defendant gave a note to aid in the construction of a railroad, with an agreement that he should receive an equal amount of railroad stock.  The court held that the payment of the money and the issuance of stock were dependent and concurrent acts, and that suit could not be maintained upon

the note without tender or delivery of the stock. The plaintiff, who brought the suit, was assignee of the note, as in the case at bar. In this case the undisputed evidence shows that, under the contract, the stock certificates themselves were to be delivered to the defendant. Under such a contract, nothing else appearing, the delivery of the notes and the delivery of the certificates of stock were concurrent acts. The contract was one of purchase and sale, as defined by the Civil Code:

"Sec. 1304. An agreement to sell and buy is a contract by which one engages to transfer the title to a certain thing to another, who engages to accept the same from him, and pay a price therefor."

The contract appears to have been not merely for a purchase and sale of stock, but an express agreement for delivery of the certificates of stock.

[6, 7] The transfer of title depends upon the intention of the parties, and is a question of law, where the facts are so clear as to justify but one conclusion. Williston on Sales, §§ 261-263. And under the provisions of the Sales Act that author says:

"Unless a different intention appears, the following are the rules for ascertaining the intention of the parties as to the time at which the property in the goods is to pass to the buyer. *    *    *

"Rule 5: If a contract to sell requires the seller to deliver the goods to the buyer, *    *    *  the property does not pass until the goods have been delivered to the buyer or reached the place agreed upon."

The same author (section 448) says:

"*    *    * It has already been shown that by the early laws of England transfer of the property in the goods and payment of the price were presumably concurrent; and the modern view has been advocated that the implied condition relates rather to delivery than to ownership. In cases where the property does not pass until delivery, the condition in regard to delivery will, in effect, be also a condition in regard to the property. *    *    * Where the conditions are concurrent, it necessarily follows that neither party can maintain an action against the other for the breach of the latter's obligation, without first making an offer of performance himself."

The contract in the case at bar required the delivery of the stock certificates themselves, and, while the certificates under some conditions may be considered merely evidence of the title to the stock, the contract cannot be construed as evidencing an intention to vest title to the stock independently of, or prior to the delivery of, the certificates. We are of opinion, therefore, that until delivery of the stock certificates no title to the stock became vested in the defendant, and that the note sued on was without consideration. It follows that neither the corporation nor its assignee can maintain an action on the note without delivery or tender of the stock certificates. It is not contended that there was ever any delivery or tender of the certificates of stock. The instruction given by the court correctly stated the law applicable to the issues and the evidence before the jury. The failure to deliver the stock certificates constituted a complete defense to the right of plaintiff to recover.

[8] Errors in receiving or rejecting evidence or instructions relating to other branches of the case, and which could not in any manner have affected the issue as to delivery of the stock certificates, would not constitute prejudicial error, and it becomes unnecessary to consider them.

The order and judgment of the trial court are therefore affirmed.