BROADHEAD & CHAPMAN v. HARRELL.
(No. 8269.)

(Court of Civil Appeals of Texas. Dallas. Jan. 10, 1920. Rehearing Denied Feb. 7, 1920.)

1. BROKERS ⬥106—AUTHORITY TO EXECUTE CONTRACT NOT SHOWN BY EVIDENCE.

Evidence *held* insufficient to show authority of broker to execute contract binding on his principal for sale of land.

2. BROKERS ⬥103 — CONTRACT CONTAINING TERMS IN EXCESS OF AUTHORITY UNENFORCEABLE BY PURCHASER.

Contract executed by broker can be repudiated by principal, so that purchasers cannot enforce it; it containing terms, among others, that vendor shall furnish abstract brought down to date, contrary to provision of authorization to sell that "All prices are net clear of expenses."

3. BROKERS ⬥103—CONTRACT NOT RATIFIED BY PRINCIPAL UNAWARE OF UNAUTHORIZED TERMS.

Principal not having seen the contract of sale executed by broker, or known of unauthorized terms therein, cannot be held to have ratified it.

Appeal from District Court, Grayson County; F. E. Wilcox, Judge.

Action by Broadhead & Chapman against D. A. Harrell. Judgment for defendant, and plaintiffs appeal. Affirmed.

J. L. Gammon, of Waxahachie, Head, Dillard, Smith, Maxey & Head and Wood, Jones & Hassell, all of Sherman, for appellants. Wolfe & Freeman, of Sherman, for appellee.

RAINEY, C. J. Appellants brought this suit against appellee, seeking to enforce specific performance of a written contract for the purchase of certain land lying in Grayson county, Tex., and, in the alternative, for damages for its breach. The said contract was executed by Claude Eatherly as agent of appellee to sell and convey to appellants several tracts of land, reciting, among other things, that he was the duly authorized agent of appellee. Appellee answered denying the agency to sell and convey said land and his authority to enter into said contract. Appellants by supplemental petition plead a ratification and adoption of said contract after full knowledge of its terms. The case was tried before a jury and the court in-

structed a verdict for appellee, and plaintiffs appealed.

The appellants complain of the court for instructing a verdict for appellee, because the evidence shows that Eatherly was duly authorized by appellee to make for him as his agent a binding contract for the sale of the land as per the contract in evidence. The evidence of Eatherly shows that the first negotiation in reference to the sale of the land was made between him and appellee over the long distance phone on October 25, 1917, and his testimony in relation thereto is, in substance:

"I had previously put in a call for Mr. Harrell through the Sherman office, and asked that he be called at Groom, Tex. Over the telephone I asked the defendant the price of his land, the home place and adjoining land, and also the Pruitt places and the Carr place. He priced it to me at $105 per acre net, clear to him without expense. I told him I had a man I could sell it to. I told him I had a man who would buy it. He said 'Bring your man and come up here and we can close it up to-day.' I says, 'I can't come to-day.' He says, 'Are you not at Shamrock?' I says, 'No, sir; in Sherman.' He says, 'I thought you were at Shamrock.' He went ahead and priced the different tracts of land to me. He put the prices at $105 an acre for the home place and adjoining, and the Pruitt places and the Carr place and the Fuller place at $37.50, and the Kersey place at $80. These prices had to be net to him, clear of any expense. Mr. Harrell asked me in the telephone conversation I have mentioned if I could hold the man there, and I told him I could close it that day. I asked him how many acres of land there were in the Pruitt places, and he said 115 acres on the south side of the road and about 50 acres on the north side. I told him I did not know he had any on the north side of the road; that I thought his brother Willis had bought that land. He said, 'No'; he still owned it, and to put it in if I could. He said: 'Close your deal there to-day, and hold the party until morning. Don't go into writing until you get a lettergram to-night pricing all the places, and you will have it in black and white, and there will be no misunderstanding about it.' When I told Mr. Harrell that I was at Sherman and not at Shamrock, as he thought, he then asked me if I could hold my man there until the next morning. I told him I could, and then he said to close the deal, but not to go into writing until I got his telegram. He said, 'I will send a night letter to-night, and you will have it in black and white.' He said the night letter was to confirm the prices he was making over the telephone. He said, 'For fear you might misunderstand the prices over the phone, I will send this night letter.' (The telephone conversation occurred on October 25, 1917. The night letter referred to in the telephone conversation was sent on the night of October 25th, received by J. C. Eatherly on the morning of October 26, 1917. J. C. Eatherly's ex parte deposition was taken on February 20, 1918. The trial of this case occurred in January, 1919.) My deposition was taken in this case in February, 1918, on the 20th, I believe. At that time my memory was fresh as to the matters concerning which I testified. In the telephone conversation I had with the defendant he did not say anything about figuring with other parties for the sale of the land. I don't think anything was mentioned about other deals in that telephone conversation. Mr. Harrell did not tell me in that conversation over the telephone not to do anything until I heard from him, but he did tell me not to go into any writing until I got the telegram. He did not tell me not to close any deal until I heard from him; that he was on a deal with other parties. He did not, in the telephone conversation, say that or anything to that effect."

On cross-examination of the witness J. C. Eatherly, defendant read in evidence a part of his ex parte deposition taken February 20, 1918, wherein, among other things, he testified in reply to the eighth direct interrogatory:

"I have stated that the contract was made over the telephone in part and in part by telegrams, copies of which telegrams have heretofore been attached. As to the terms of the contract they were as follows: I was to sell his home place and all lands adjoining the home place for $105 per acre net to him, and was to get $80 per acre for the Kersey place, and $37.50 for the Fuller place, and $105 for the Pruitt places per acre, and these prices were to be net to him, and I was to have all the money I obtained above these prices as commissions for selling the lands. Yes; I told him over the telephone conversation that I had a buyer for the home place and adjoining land, also the Pruitt places, and could close the deal on that date. He told me not to go into a contract until I received a telegram from him which he would send that night, and I would have it in black and white so we would have no misunderstanding. He also, in this conversation, priced the other places as I have heretofore stated, and I told him that I thought I could sell the Kersey place. Yes; I have stated the sum and substance of all that was said."

In reply to the ninth interrogatory the witness testified:

"Yes; I claim that I was authorized to make a sale of all the lands mentioned by telephone conversation and by telegrams from the defendant."

In reply to the tenth interrogatory he says:

"There was no other writings other than the ones before attached."

On the night of October 25, 1917, a telegram was sent by Mrs. Harrell, wife of D. A. Harrell, by appellant's authority, and received by Eatherly on the 26th of October, 1917, which reads as follows:

"Groom, Texas, Oct. 25, 1917.

"Claude Eatherly, Sherman, Texas: Would take one hundred five dollars per acre all joining home place, eighty dollars per acre Kursey place, all prices are net clear of any expense; Fuller place thirty-seven fifty. Pruett place one

hundred five. Carr place sold. If you have prospect, wire me as on deal with others.
"Mrs. D. A. Harrell."

[1] The foregoing evidence of Eatherly of the phone conversations and the night letter constitutes, in substance, all the authority given by Harrell to Eatherly to make a sale of said land binding on Harrell. The telegram sent by Harrell to Eatherly on the night of October 25, 1917, which was received before the contract of sale was made, shows that Harrell never intended for Eatherly to close the trade, for it concludes, "If you have prospect, wire me as on deal with others." Harrell had authority to make sale himself or contract with others, and if Eatherly thought he had authority to enter into a contract for Harrell, that telegram ought to have informed him that Harrell had not intended for him to contract the sale of the land. Watkins v. Campbell, 100 Tex. 542, 101 S. W. 1078; Brillhart v. Beever, 198 S. W. 973; Moulton v. Kershaw, 59 Wis. 316, 18 N. W. 172, 48 Am. Rep. 516; 9 C. J. § 28, p. 526. Section 28, Corpus Juris, reads as follows:

"Except where the power to complete a sale or to enter into a contract of sale binding on the principal is clearly given to the broker by the terms of his contract of employment, the ordinary authority of a real estate broker employed to sell real estate is merely to find a purchaser who is ready, able, and willing to enter into a contract on the terms specified by or acceptable to the principal; and in the absence of such special authorization he has no authority to enter into a contract to sell, or to sell and convey, binding upon the owner."

We think the evidence is lacking to show authority in Eatherly to execute a binding contract for the sale of the land; that there is no reason for reasonable minds to differ as to its meaning; therefore there is no error in the court's giving the peremptory charge to find for defendant.

[2] If it could be conceded that the evidence is sufficient to show that Eatherly had authority to sell the land, it does not show that he was authorized to bind Harrell in several particulars, as therein written. For instance, the written contract binds Harrell to furnish an abstract brought down to date, to pay all taxes against the land for the year 1917, to make a general warranty deed to the land, to free the land of all liens and incumbrances, to correct any defects shown to exist by the abstract, to make arrangements about the lands rented, and to give immediate possession of the home place upon execution of the deed. Doing some of these things may have been very simple and easily complied with, but under some circumstances they may have been very burdensome to Harrell and he may not have been willing to subscribe to them, but Eath-

erly exceeded his power if he had authority to make a sale, and Harrell had the right to repudiate the acts of Eatherly in so doing. Evants v. Fuqua, 102 Tex. 430, 118 S. W. 132, 132 Am. St. Rep. 892; Hagler v. Ferguson, 102 Tex. 432, 118 S. W. 133, 132 Am. St. Rep. 895; Colvin v. Blanchard, 101 Tex. 231, 106 S. W. 323; Daugherty v. Leewright, 174 S. W. 841; Gough v. Coffin, 55 Tex. Civ. App. 550, 120 S. W. 210; Caldwell v. Scott, 143 S. W. 1192; De Sollar v. Handscome, 158 U. S. 216, 15 Sup. Ct. 816, 39 L. Ed. 956.

In the powers granted to Eatherly by Harrell he was only authorized to sell the land at terms as stated by Harrell, as follows, "All prices are net clear of any expense." Such terms as imposed by the contract of sale were surely beyond the powers delegated to Eatherly.

[3] But it is contended by appellants that appellee ratified and provision as to the furnishing of an abstract and all the other provisions objected to. We cannot concur in this contention, as the evidence fails to show that Harrell ever knew of all of such provisions or ever saw the contract, and not knowing its terms he is not bound by Eatherly's acts in respect to the terms of said instrument.

We have duly considered all of the assignments presented by appellants, but find none well taken, and the judgment is affirmed.

Affirmed.