**MORRISON et al. v. NEELY et al.**
(No. 229–2407.)

(Commission of Appeals of Texas, Section B. June 8, 1921.)

1. **Appeal and error** &#x25CB;&#x21DD;724(1)—**Statute as to sufficiency of assignment of error liberally construed.**

Vernon's Sayles' Ann. Civ. St. 1914, art. 1612, making an assignment of error directing court's attention to errors complained of sufficient, is to be liberally construed.

2. **Appeal and error** &#x25CB;&#x21DD;750(4)—**Assignments of error held to attack sufficiency of evidence to sustain findings of fact.**

Under Vernon's Sayles' Ann. Civ. St. 1914, art. 1612, assignments of error sufficient to direct the court's attention to the fact that appellant claimed that the evidence was not sufficient to support the judgment *held* to present question as to sufficiency of evidence to support the findings of fact of the trial court, though the assignments do not directly and specifically attack the findings of fact.

3. **Appeal and error** &#x25CB;&#x21DD;1094(1)—**Sufficiency of evidence to support judgment exclusively a question for the Court of Civil Appeals.**

The Supreme Court has no jurisdiction to pass upon the sufficiency of the proof to sup-

port the judgment; such question being within the exclusive province of the Court of Civil Appeals.

Error to Court of Civil Appeals of Second Supreme Judicial District.

Action by Byron B. Byrne against Earl Morrison and others, in which W. H. Neely and wife and another filed a cross-action against defendant Morrison and one Hastings. Judgment for plaintiff on the main action. Judgment for Neely and wife on the cross-action, affirmed by Court of Civil Appeals (214 S. W. 586), and Morrison and another bring error. Remanded to Court of Civil Appeals, with instructions.

L. W. Sandusky, of Colorado, Tex., for plaintiffs in error.

R. G. Smith, of El Paso, M. Carter, of Colorado, ·Tex., and J. E. Starley, of Pecos, for defendants in error.

KITTRELL, J. The action out of and from which the appeal in this case arose was based on a certain bond for title executed by plaintiffs in error to one Bryon B. Byrne to three certain sections of land in Culberson county by plaintiffs in error, on which bond one W. H. Neely and his wife and one Wood were sureties. Byrne recovered the judgment he sought, and secured relief he was satisfied with, in the form of a decree for specific performance, and none of the defendants has appealed from that judgment.

The case as presented in the Court of Civil Appeals was an appeal by Morrison and Hastings from a judgment of $2,412.20 upon a cross-action against them by W. H. Neely for money had and received, and not accounted for.

To all intents and purposes the question of title to none of the land is in fact involved; for, while there are a number of instruments in addition to the bond for title, in the form of contracts, deeds of trust, and deeds offered in evidence, it is clear that by the unappealed-from judgment in favor of Byrne title to three sections ·passed into him, and by a deed of which neither the regularity, validity, nor effect is called in question the title to the rest of the land passed into Byrne's mother, who paid a valuable consideration for it.

The result as to the land left no question to be appealed, except, as has been said, that of whether or not the trial court rightly adjudged that plaintiffs in error were debtors to Neely for balance of money had and received.

While ·this is true, there are certain facts necessary to a clear understanding of the case, or which will at least be helpful to that end. The case was tried before the court without a jury, and was evidently tried with ability and most painstaking care, and the findings of fact, which cover in small typewriting 20 pages of the record, are abundantly sustained by the evidence, and all findings of values and debts and credits are set down in itemized detail with mathematical accuracy.

In the main the ˉtestimony as to sales (so far as not revealed by record evidence) and of receipts and payments by plaintiffs in error was given by Morrison.

The material facts stated in as condensed form as is practicable are:

(1) That about May 1, 1914, W. H. Neely owned eleven sections of school land bought in the usual statutory way from the state, none of which had been paid for in full, and. on all· of which he was more or less delinquent in interest payments.

(2) He had complied with the law as to occupancy of eight sections, but as to the other three he had not.

(3) Besides his indebtedness to the state, Neely owed quite a number of other debts which were pressing him, and he proposed to Morrison and Hastings in effect that they should take charge of all his lands, taking title in his own name, and sell, trade, or in any wise that they might see fit handle the same, borrowing money, if necessary, and when the lands had been sold and his debts had been paid, including a compensation to them of $1,000, pay him whatever remained.

(4) Eight of the sections were under mortgage, and the note was held by the Roscoe State Bank, and Morrison and Hastings agreed to buy in these eight sections at the sale under the deed of trust, which was given April 20, 1912. Morrison bought these sections in for $1,006 on September 1, 1914, at trustees sale.

(5) Neely and wife also made a contract with Morrison and Hastings to live out the rest of the necessary three years on the other three sections, and when he had done so to make deed to Morrison and Hastings.

(6) It was admitted that Neely lived out the necessary time and secured certificate to that effect, which was duly recorded.

(7) On September 4, 1915, after said contract last mentioned was made, Morrison and Hastings executed the bond for title which was the basis of the action in this case, as before stated.

(8) Morrison and Hastings on October 20, 1914, borrowed $3,000 and gave a deed of trust on all the eleven sections as security for the debt, borrowing the money in their own names.

(9) After certain brokerage fees and expenses were deducted, they received net $2,-688.33, out of which was repaid to them or to Morrison the $1,006 paid out at the foreclosure sale, and an additional sum allowed by the court on Morrison's testimony sufficient to make the total $1,075.21, for which, among a large number of other items, Morrison and Hastings were allowed credit.

On August 14, 1915, Morrison and Hast-

ings, and Morrison as agent for Neely, made a deal with Byron B. Byrne whereby they exchanged him all the eleven sections for property known as the "brick garage," which included an automobile accessory and repair shop, a tin shop, a large amount of material on hand, and two new and two secondhand automobiles, all of a reasonable value of more than $4,000. Byrne was to take the land with the incumbrance of $3,000 on it which had been borrowed by Morrison and Hastings, and assumed the state debt.

Neely agreed to the trade, but the property was never turned over to him; Morrison and Hastings' explanation being that Byrne could not close the deal and make transfer free from incumbrance.

In order to get possession the contract and bond were put in escrow with a bank which had a claim in such form against Byrne or the property, or both, that Byrne could not make delivery, and Morrison and Hastings, without the knowledge of Neely, went security for Byrne at the bank for $2,000, and the "garage" was turned over to Morrison and Hastings on September 22, 1915, and they kept it in possession and operated it at a loss until February 28, 1916.

They took no inventory of stock, kept no invoice or books of account, but disposed of most, if not all, of the stock, including all the automobiles, and on February 26, 1916, proposed to Byrne that, if he would pay or arrange to have paid at the bank the $2,000 note, they would turn back to him the property.

The arrangement was carried out, and the court found that the value of the property turned back was $750. Byrne's mother paid the note, and Morrison and Hastings conveyed her eight of the sections of land, she assuming the $3,000 note they had given for the borrowed money.

In October, 1913, after the deed of trust under which the Roscoe State Bank sold the eight sections of land was given, Neely deeded three sections to one Spruill for lands in Mitchell county, but before the foreclosure on Neely's land by the bank a vendor's lien was foreclosed on Spruill's land, and the subsequent foreclosure on Neely's land made it impossible for the trade to be carried out. Spruill was not made a party to the action in any way, nor was it sought by Morrison and Hastings to have him made a party.

About the first of the year 1915 Neely, to use the language of the trial court, "entered into some kind of land trade" with one Witten to convey him some of the sections of land on which the Roscoe State Bank had a lien, and Neely through his son took possession and held the Witten land (which was in Ward county) during the year 1915, but the trade fell through on account of failure of Witten's title to the Ward county land.

Witten was not a party to the case in the trial court, nor was it sought by Morrison and Hastings to have him made a party, nor when the testimony was produced relative to the Spruill and Witten deals did any party to the suit ask to have trial stayed to make parties.

It has been very difficult to cull out from such a complexity of trades and deals and deeds the facts necessary to be understood, but the above is a summary in as condensed form as is consistent with clearness.

The Court of Civil Appeals, in affirming the judgment of the trial court, held that—

"The assignments do not directly and specifically attack the findings of fact filed by the trial judge, and it is well settled that the question of the sufficiency of the proof to sustain the findings of fact cannot be raised merely by an attack upon the judgment for the lack of such proof." 214 S. W. 586.

The writ was granted on the ground that the assignments were sufficient to challenge the correctness of the judgment. We are of the opinion that they were sufficient to direct the attention of the court to the errors complained of, which meets the requirement of the statute, since that constitutes all the functions of an assignment of error.

[1] When article 1612, R. S. 1911, relating to the filing of assignments of error, was amended by the act of 1913 (V. S. R. S. art. 1612), after prescribing what is necessary to be done by an appellant, the provision was added, "but an assignment shall be sufficient which directs the attention of the court to the error complained of," which clearly indicates that the statute should be liberally construed, and it has been uniformly so construed. The principle upon which this court has acted in passing upon the question is clearly stated in Land Co. v. McClelland, 86 Tex. 179, 23 S. W. 576, 1100, 22 L. R. A. 105:

"They [the rules and statutes] should be given a reasonable and practical construction, and not one calculated to embarrass suitors in the appellate tribunals by unnecessary restrictions, * * * so as to cut off the approach of such parties as seek relief in good faith from the consequences of supposed errors committed to their prejudice in the trial courts."

See Orange Lumber Co. v. Ellis, 153 S. W. 1181; Hess & Skinner v. Turney, 109 Tex. 208, 203 S. W. 593; Barkley v. Gibbs, 227 S. W. 1099.

[2, 3] While it is true, as is said by the Court of Civil Appeals, the assignments in the instant case "do not specifically attack the findings of fact of the trial court," yet they are sufficient to "direct the attention of the court" to the fact that appellant complained that the evidence was not sufficient to support the judgment; a question the determination of which is the exclusive province of the Court of Civil Appeals, as the Supreme Court has no jurisdiction to pass upon the sufficiency of the proof to support

any given judgment. Since the assignments were sufficient to direct the attention of the court to, an error complained of, which it only had the right to pass upon, it should have considered them.

We recommend that the case be remanded to the Court of Civil Appeals, with instructions to consider the assignments.

PHILLIPS, C. J. The judgment recommended in the report of the Commission of Appeals is adopted, and will be entered as the judgment of the Supreme Court.

We approve the holding of the Commission of Appeals on the question discussed in its opinion.

─────
⬤⟿For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes