LA BEAUME et al. v. SMITH, ALBIN & PEAY. (No. 1962.)

(Court of Civil Appeals of Texas. Amarillo. Nov. 29, 1922. On Motion for Rehearing, Jan. 10, 1923.)

1. Brokers ⬅14—To determine authority under contract previous course of business and construction by parties may be considered.

In arriving at the intention of a contract as to whether brokers had authority under the terms of enlistment of property to execute a contract in behalf of the owners for sale or lease, the court might consider previous course of business between the parties and the practical construction thereafter put by them on the contract.

2. Brokers ⬅88(2) — Authority to execute contract for owners held question of fact for decision of the court trying the facts.

Evidence held to show that the question of the authority of brokers to execute a contract of sale for owners presented a question of fact for the decision of the trial court.

3. Mines and minerals ⬅74—Sale of oil lease held binding and not to give purchasers option to recede.

Contract for the sale of an oil and gas lease by which purchasers agreed to pay $5.000 to be deposited in a bank in escrow subject to the terms of the contract, the balance to be paid on approval of title within time stated requiring sellers to furnish abstract of title giving time to purchaser to submit objections and time to the seller to remedy same, and providing that in event purchaser fail or refuse to comply with his agreement the sum of $5,-000 shall be delivered to the seller as liquidated damages, was a binding contract as against objection that it gave the purchasers option of receding therefrom.

4. Brokers ⬅66—Agreement to pay commission to purchaser or representative held not to forfeit right to commission.

Agreement by brokers to pay part of their commission to purchaser or one representing him in order to effect the sale was not inimical to principal's interest and did not deprive broker of right to compensation.

5. Brokers ⬅86(1)—Evidence held to show ratification of broker's contract by principal.

Evidence held to show ratification of broker's contract by principal.

On Motion for Rehearing.

6. Appeal and error ⬅733—Assignments of error that judgment had no basis in pleading or evidence held reviewable, though not specific.

While assignments that judgment is unsupported by evidence or pleading should ordinarily be specific, general assignments were reviewable in the discretion of the appellate court, where the question was clearly raised in appellant's brief giving appellees opportunity of replying, and no motion for a new trial was filed or required, so that specific assignments would not have changed the situation.

7. Appeal and error ⬅748(1) — Appellate court may review assignments not complying with rules.

The appellate court has authority in its discretion to consider questions raised under assignments that do not comply with the rules.

8. Brokers ⬅71—Listing land with broker at net price to owner held not agreement to pay broker excess as commission.

A letter to a broker authorizing him to put owner's land on the market at $1,000 per

acre "net to us" did not imply agreement to pay the excess over that amount to the broker as commission.

Appeal from District Court, Wichita County; P. A. Martin, Judge.

Action by Smith, Albin & Peay against G. E. La Beaume and others. From a judgment for plaintiffs, defendants appeal. Reversed and remanded.

Leslie Humphrey, of Wichita Falls, and Slay, Simon, Smith & Morris, of Fort Worth, for appellants.

Carrigan, Montgomery, Britain, Morgan & King, of Wichita Falls, for appellees.

BOYCE, J. This suit was brought by appellees, Smith, Albin & Peay against appellants, G. E. La Beaume and others, to recover commissions on the sale of an oil and gas lease on 15 acres of land in Wichita county. The appeal is from a judgment for the plaintiffs, rendered on trial before the judge without a jury.

On April 6, 1919, G. E. La Beaume, at Fort Worth, wrote Smith, Albin & Peay, brokers, at Wichita Falls, as follows:

"In block 72 there are several parties interested besides Young and myself and they are anxious to sell so we are to-day going to put this fifteen acres on the market at $1,000 per acre net to us. This attractive price should interest some one. Get busy for we need the money."

Prior to the writing of this letter, both La Beaume and Young had talked to Smith, Albin & Peay about the sale of the lease, and requested them "to dispose of the lease." La Beaume held the legal title to the lease, though he had a number of associates who had an equitable interest therein; among these being Frank Young. On April 12th the brokers executed a contract in the name of G. E. La Beaume for the sale of the oil lease to J. C. Wharton for the sum of $18,750. The provisions of this contract material to our decision of the propositions are as follows:

First. It was agreed that $5,000 of the consideration should be deposited in the National Bank of Commerce of Wichita Falls, in escrow, subject to the terms of the contract, and that the balance of the consideration should be paid on approval of the title to the lease not exceeding 13 days from the date of the contract. Second. That within 5 days after the date of the contract La Beaume should furnish the purchaser an abstract of title for examination; that the purchaser should have 5 days within which to examine it and submit objections, and that the seller should then have 3 days within which to cure any defects pointed out; that the seller should pay the "actual cost of obtaining for the permanent use of the purchaser or his assigns, an abstract of title to said land." Third. That in the event the

purchaser should "fail or refuse to comply with his portion of this agreement, then said sum of $5,000 shall be by said bank delivered to the said G. E. La Beaume, as liquidated damages." Fourth. The firm of Smith, Albin & Peay agreed to pay out of their commissions to Wharton & Hall, representing the buyer, the sum of $1,248.95.

The Wharton, of Wharton & Hall, was J. C. Wharton, the purchaser. Soon after the execution of the contracts, plaintiffs orally informed Young of such fact and of its terms, and Young expressed satisfaction with it. The plaintiffs, on April 13th, wired La Beaume that they had sold the lease and in this telegram asked for abstract for examination and also asked for confirmation of sale. Plaintiffs also, soon after sending of the telegram, had a phone conversation with La Beaume, in which they informed him that the contract had been signed, stating its terms to him briefly, and that the money had been put up in the bank. Reference was also had in this conversation to the abstract, and La Beaume said that the contract was satisfactory and he would send the abstract. He did actually send the abstract in pursuance to the telegram and this conversation. There is testimony to the effect that plaintiffs had written other contracts for sale of leases by La Beaume, and that these were similar in terms to the contract of sale in this case. The testimony is meager on this point, and it is not clear whether the witness meant to say that the plaintiffs, as brokers, had executed these contracts in La Beaume's name, though that inference might be drawn from the testimony. On April 16th La Beaume wrote the brokers that he regretted to inform them that he had been restrained by injunction, in suit brought by some of his associates, from selling the land. He says in this letter:

"They (referring to the plaintiffs in the injunction suit) are in the pool and I assure you that I acted in good faith when I wrote you to sell for $1,000.00 per acre, and at the same time with the above men having full knowledge of the same."

The contract was not carried out because of the refusal of La Beaume and his associates to proceed thereunder though the purchaser was ready, willing, and able to take and pay for the lease.

The first point urged is that the brokers had no authority under the terms of the enlistment to execute a contract in behalf of the owners for the sale of the lease. The question as to the authority of a real estate broker to execute a contract for the sale of property where his employment was "to sell" has been considered by the courts of this state in a number of cases. The Supreme Court, in the case of Colvin v. Blanchard, 101 Tex. 231, 106 S. W. 323, held that a letter from an owner of land to a real estate broker, stat-

ing that he would "sell" land at a certain price, and would pay the broker a commission "for making the sale," taken in connection with the fact that the broker had been previously authorized to sell the same property, necessarily meant that the brokers were authorized to enter into a contract of sale in the owner's name. The San Antonio Court of Civil Appeals, in the case of Donnan v. Adams, 30 Tex. Civ. App. 615, 71 S. W. 580, in which writ of error was denied, considered a similar question. While perhaps the two decisions may be reconciled, there seems to be a note of discord in their general tone. The question is elaborately discussed in the opinion of Judge Fly, in Donnan v. Adams, and the conclusions stated by him seem to us to be sustained by sound reason and good authority. In addition to the authorities cited in that case, see 9 C. J. 528, and Broadhead v. Harrell (Tex. Civ. App.) 218 S. W. 125. But we think that a holding under the facts of this case that the brokers were authorized to enter into a contract for the sale of the land may be sustained under the authority of either of the cases cited. This conclusion is announced in the opinion in Donnan v. Adams:

"From our investigation of the subject we arrive at the conclusion that the extent of the authority conferred by a memorandum in writing merely empowering an agent to sell must be determined by the circumstances under which the power is given, the person to whom it is given, and all facts surrounding the parties at the time of the execution of the writing."

[1, 2] It is not clear from a mere reading of the terms of the letter of April 6th that the brokers were thereby authorized to make a contract for the sale of the lease. In arriving at the intention of the parties, the court before whom the trial was had might take into consideration the previous course of business between the parties and the practical construction thereafter put by them on the contract. La Beaume, in his letter of April 16th, says, referring to the letter of April 6th: "That I acted in good faith when I wrote you to sell for $1,000.00 per acre." When, prior to this, he was informed that a contract had been made, he raised no objections, but furnished the abstract for examination under the contract. So that not only by his silence but by his action in reference to the abstract he assumed that the plaintiffs were acting within their employment in the execution of a contract for the sale of the lease. Under the circumstances, a question of fact was presented for decision of the trial court, and we are not prepared to say that his conclusion thereon was unwarranted. In this connection it is also insisted that the provisions for furnishing an abstract and as to time for examination were in any event unauthorized. While the testimony is not satisfactory as it might

247 S.W.—40

be, we believe it sufficient to support a finding by the trial court that the agents either had authority to execute the contract containing the provision it did in reference to the abstract, or that La Beaume ratified the act of the plaintiffs in executing the contract.

The second point presents the contention that there is no basis in the pleading and evidence for the judgment, in that the contract of enlistment provided for the sale at $1,000 per acre net to the owners with no express agreement for the payment of commission, and that such contract did not imply an agreement that the brokers were to receive as their commission all over $1,000 per acre for which they might sell the lease. The pleading was that the lease was listed with the plaintiffs for sale at $1,000 per acre, and that the defendants agreed to pay plaintiffs as compensation for their services any amount above $1,000 per acre for which the lease might be sold. Assignments Nos. 1 and 16, under which this point is presented, merely complain of the judgment because it is "unsupported by the evidence and against the great preponderance of the evidence." These assignments are too general to require consideration of the sufficiency of the evidence in respect now contended for. Rule 25 for Courts of Civil Appeals (142 S. W. xii); Musick v. O'Brien (Tex. Civ. App.) 102 S. W. 458. If the pleading had not stated a cause of action, we should consider the question as presenting fundamental error; but we regard the pleading as sufficient, and the only question presented under this point is as to the sufficiency of the evidence.

[3] It is asserted under the third proposition that the contract for the sale of the lease was not a binding contract of sale, but gave the purchasers the option of receding from it by payment of the $5,000 deposited in the bank. We do not so construe the contract. Bourland v. Huffhines, 244 S. W. 847 recently decided by this court; McAdams v. Burdine (Tex. Civ. App.) 232 S. W. 343; La Prelle v. Brown (Tex. Civ. App.) 220 S. W. 152.

[4] The fourth point presented is that the agreement for division of commission with the brokers representing the buyer placed plaintiffs in a dual attitude without the consent of the owners of the land and deprived them of any right to recover a commission had they otherwise been entitled thereto. The agreement on the part of the brokers to pay a part of their commission to the purchaser or to one representing him, in order to effect the sale, is in no way inimical to the interest of the brokers' principal; rather it operates to his benefit, and there is no reason for holding that such an agreement would deprive the broker of the right to his compensation. Chase v. Veal, 83 Tex. 333, 18 S. W. 597, approved in Armstrong v. O'Brien, 83 Tex. 635, 19 S. W. 274.

[5] The fifth point is that the evidence is

insufficient to show that La Beaume ratified the contract made by the plaintiffs. This question is closely connected with that raised by the first point, and our conclusion with reference thereto renders it unnecessary to consider this point. However, we are inclined to think that the evidence is sufficient to raise an issue of ratification. According to the evidence, Smith, Albin & Peay had written other contracts for La Beaume, which contained similar provisions; La Beaume was informed as to the general contents of the contract and knew that he was required thereunder to furnish an abstract. He stated that he would do so and actually did have the abstract delivered. The case is therefore not like that discussed by the Supreme Court in Colvin v. Blanchard, supra, where the owner did nothing after being informed of the execution of the contract.

We are of the opinion that the judgment of the trial court should be affirmed.

### On Motion for Rehearing.

[6, 7] The motion for rehearing is devoted principally to an attack on our holding that assignments 1 and 16 are too general to require consideration. It has always been held that a complaint of the verdict of the jury or judgment of the court that it is unsupported by the evidence, or is against the preponderance of the evidence, or is contrary to the evidence, is too general to constitute a distinct specification of error within the meaning of the statute and rules of procedure. We might cite authorities almost without number to sustain this proposition, but refer to only a few decisions of the Supreme Court directly in point. Harvey v. Ogilvie, 66 Tex. 185, 18 S. W. 448; Ackerman v. Huff, 71 Tex. 317, 9 S. W. 236; Houston v. Blythe, 71 Tex. 719, 10 S. W. 520; Macey v. Wilson (Tex. Sup.) 12 S. W. 282. Nor do we think that the Legislature intended, by the change in article 1612 of the Revised Statutes, as effected by the amendment thereof in 1913 (Vernon's Sayles' Ann. Civ. St. 1914, art. 1612), to change the rule as to the character of assignments we have under consideration. It is true that there is a tendency in recent decisions to be very liberal in determining the sufficiency of assignments. Harlington Land & Water Co. v. Houston Motor Car Co. (Tex. Com. App.) 209 S. W. 146; Morrison v. Neely (Tex. Com. App.) 231 S. W. 730. In the case first cited the Commission of Appeals said that—

"Where the brief, taken as a whole, reasonably presents the error sought to be corrected, we believe it more in accord with justice to give it consideration."

And the Fort Worth court has recently held under this line of decisions it was required to consider assignments equally as general as those presented in this case. Rone v. Marti (Tex. Civ. App.) 244 S. W. 640. A distinction might be drawn between the decisions of the two cases by the Commission of Appeals first cited and this case, and we are not prepared to agree that under these decisions we are required to consider the assignments under consideration. The intimation that the sufficiency of assignments may be aided by the propositions and statements made in the brief so as to require a consideration of assignments otherwise defective does not seem to us to be in accord with previous decisions of the Supreme Court. Jackson v. Cassidy, 68 Tex. 282, 4 S. W. 541; Cammack v. Rogers, 96 Tex. 457, 73 S. W. 796.

However, we have authority in our discretion to consider questions raised under assignments that do not comply with the rules. Cammack v. Rogers, 96 Tex. 457, 73 S. W. 795. The trial in this case was before the court without a jury; no motion for new trial was filed or required to be filed; if the assignments referred to had pointed out with particularity the facts relied on to show that the judgment was not sustained by the evidence, nothing could have been done to change the status of the case. The question is clearly raised in the brief under a heading styled, "Point No. 2," and the appellees have the same opportunity of presenting their reply thereto that they would have had if the assignments had been as specific as the brief now is. These circumstances may properly be taken into consideration in determining the exercise of our discretion and have convinced us that we should consider the question as if properly presented.

[8] There was no evidence of any express agreement to pay a commission, and appellees must rely on the letter of April 6, 1919, quoted in our opinion, to establish the allegations of their petition that there was an agreement to pay the brokers as commission any excess of the sale price over $1,000 per acre. The listing of land at a net price to the owner does not imply an agreement to pay the excess to the broker as commission. Sandifer v. Foard County, 63 Tex. Civ. App. 651, 134 S. W. 823; Id., 105 Tex. 420, 151 S. W. 523; Allen v. Clopton (Tex. Civ. App.) 135 S. W. 242; Louva v. Worden, 30 N. D. 401, 152 N. W. 690; 9 C. J. 581. The plaintiffs, therefore, failed to sustain the allegations of their petition, and we hold that this point is well taken.

The motion for rehearing will be granted, and the judgment reversed and remanded.